[Civil No. 3392. Filed July 14, 1933.]

[23 Pac. (2d) 941.]

STATE BOARD OF HEALTH OF THE STATE OF ARIZONA, Petitioner, v. ANA FROHMILLER, Auditor of the State of Arizona, Respondent.

Messrs. Moeur & Moeur, for Petitioner.

Mr. Arthur T. La Prade, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General, for Respondent.

ROSS, C. J. — The petitioner is a state agency organized and existing under article 1, chapter 61, Revised Code of 1928, entitled "State Board of Health."

The general appropriation bill, chapter 95, Laws of 1933, approved March 18, 1933, section 1, reads as follows:

"The following sums herein set forth are hereby appropriated for the fiscal years beginning July 1, 1933 and ending June 30, 1934, hereinafter designated as the 22nd Fiscal Year, and beginning July 1, 1934 and ending June 30, 1935, hereinafter designated as the 23rd Fiscal Year, for the several purposes and objects as hereinafter specified, and the state auditor is hereby authorized and directed to draw warrants on the state treasurer to and not to exceed the amounts herein set forth and for the purposes herein specified; and the state treasurer is hereby authorized and directed to pay said warrants out of the general fund of the state and the appropriation for the respective state agencies herein made. . . .

"Subdivision 21. Board of Health, Child Hygiene and Child Welfare.

234

| | "For the 22nd Fiscal Year | For the 23rd Fiscal Year |
|---|---|---|
| For salaries and wages for the following positions: | | |
| Superintendent and Registrar | $ 3,600.00 | $ 3,600.00 |
| Other salaries & wages | 7,780.00 | 7,780.00 |
| Total salaries & wages for Board of Health & Vital Statistics | $11,380.00 | $11,380.00 |
| For operation | 3,775.00 | 3,775.00 |
| For travel | 250.00 | 250.00 |
| For capital investment | 350.00 | 350.00 |
| Total for Board of Health & Vital Statistics | $15,755.00 | $15,755.00" |

On July 6th the petitioner, representing that its activities required immediate cash outlays for postage, traveling expenses and other emergencies, applied to the respondent, state auditor, to provide it with the sum of $250 for such purposes. Section 2628 of the Revised Code of 1928, being a part of what is known as the "State Financial Code" (article 2, §§ 2614–2631), provides that when such application is made in conformity therewith the auditor shall allow it, draw a warrant to the applicant officer, and charge the amount against the appropriation made to that office for the class of expenses covered by the application, and that the treasurer shall pay such warrant. The auditor, not being able to determine from the law what her duty in the premises was, refused to provide the petitioner with the funds applied for, hence this proceeding in *mandamus.*

On March 14, 1933, the legislature passed an emergency measure (chapter 48) suspending, or purporting to suspend, the Financial Code in its application to the general appropriation bill for the twenty-second and twenty-third fiscal years; and, if such legislation is effective, section 2628, *supra,* providing for an imprest fund, is inoperative. On the other hand, the legislature in the appropriation bill for those years, which was approved four days later than the said

emergency measure, or on March 18, 1933, in section 2 thereof announces that "the appropriations herein made are subject to the provisions of the State Financial Code." If this expressed recognition, of the Financial Code is to be accepted, then section 2628 is in force and effect. The equivocal situation thus created by the legislature's divergent expressions is apparent, and we are not surprised that the auditor should refuse to divine what was meant and should offer to do her duty as determined by the court.

We think it is a universal rule that the later of two acts of the legislature on the same subject, if there is a conflict, is accepted by the courts as the legislative will. *Olson* v. *State*, 36 Ariz. 294, 285 Pac. 282; *Kitchel, Treasurer*, v. *Gadsden Hotel Co., ante*, p. 226, 23 Pac. (2d) 939. Under this rule the Financial Code was not suspended and it and the appropriations for the twenty-second and twenty-third fiscal years should be construed together, if possible; but since the appropriation bill for those years is the last expression of the legislative will, it will prevail in case of conflict.

In the appropriation bill for the twenty-second and twenty-third fiscal years the sums appropriated are allotted to the departments, institutions and offices, sometimes in a lump sum to be apportioned by the heads of departments or institutions or offices: "To salaries and wages," "to operation," "to travel," "to capital investment," etc.; and in some cases to each one of these classes is assigned a definite sum. In other words, the legislature has confided to these heads the duty and obligation of maintaining their respective institutions, departments or offices with the funds assigned them, in the proportions indicated, rather than itself fixing the number of employees and their salaries, or segregating operation into different items, etc., leaving this detail to the institution, department or office. This method of appropriating the

public funds is not one that commends itself, inasmuch as it is so easy to abuse the trust confided by using the funds intended for one purpose for another and different purpose, but we know of no rule that prohibits the legislature from reposing the discretion and power in such departments, institutions or offices.

The application to the auditor is for an advance allowance for postage, traveling expense and other emergencies. Under section 2618 of the Financial Code these charges are put in the classes of "operation" and "travel," and, since the appropriation is $3,775 for operation and $250 for travel, the demand is within the appropriation and should be allowed as provided in section 2628 and section 1 of the current appropriation bill. When the legislature has specifically stated the amount that may be spent for any purpose, as for travel, the department, institution or office must operate within that sum and may not take from an appropriation for another purpose to supplement it.

Where, as in the case of the state auditor, the appropriation for each of the fiscal years is the lump sum of $25,062 "for salaries and wages; for operation; for capital investment; to defray the expense of employing a certified public accountant and assistants," the proportion of the total appropriation that may be used for these different purposes is a matter to be determined by the auditor according to the necessities of her office. The same with reference to the Attorney General, banking department, corporation commission, land commission, law and legislative reference library, livestock sanitary board, mine inspector, secretary of state, sheep sanitary commission, state examiner, state loan board, Supreme Court, State Treasurer, tax commission, commission of agriculture and horticulture, dairy commissioner, and others.

Where the salaries of the heads of these departments, institutions or offices, or of any of their subordinates, are fixed by general law, such salaries should be deducted from the appropriation and the balance apportioned to the different classes for which the appropriation was made, to be used in such manner as to maintain and operate such department, institution, or office as the law requires for the biennium. And such apportionment should be certified to the auditor as the basis upon which warrants are to be drawn for salaries and wages. Claims for expenses other than salaries and wages must, of course, be itemized and verified as provided by law.

It is claimed by respondent that if the method thus adopted by the legislature is followed it will violate that part of section 62 of the Revised Code of Arizona 1928 reading as follows:

"No salary or compensation, however, shall be paid unless the same is authorized in the appropriation for that office, board or commission. The salaries and compensation of all deputies, assistants, clerks and employees shall be in the amount as fixed in the appropriation for that office in the general appropriation bill."

The emergency act, chapter 48, Laws of 1933, suspends this part of section 62 during the fiscal years of 1933–1934 and 1934–1935, clearly showing the intention of the legislature to give the departments, institutions, agencies, and offices a lump sum, or that part of it remaining after deducting statutory salaries, to be apportioned as in their discretion and judgment should appear necessary and best for the public service. It was the evident intention of the legislature that appropriations, except as otherwise indicated in chapter 95, should be disposed of in accordance with the rules, as to classification and purposes and time of payment, as set forth in the Financial Code.

Each head of a department, institution or office knows perfectly well that his appropriation for the twenty-second and twenty-third fiscal years was, for the most part, the same items as for the previous years but considerably reduced in amount on account of the depression and the consequent inability of the property owner to pay his taxes, and he should now do his part to relieve the situation. These departments, institutions and offices, it should be remembered, are created for the purposes of the state and not for the men who man them. In the operation of government men are necessary, but government exists for the people and not for those who may temporarily administer it. Those who are chosen to govern are honored with power and position and also compensated for their services, and when the legislature, either through oversight or other misfortune, trusts these officers to spend the funds placed at their disposal for the offices, departments or institutions, we think they should do so honestly, willingly and economically and in accordance with the legislative intent. The officer must operate within the appropriation given him. He must cut his garment to fit the cloth.

Of course the salaries of officers as fixed by law and the salaries and wages of employees as fixed by the department, institution or officer are exclusive. Those offices or agencies of the state that are authorized to collect fees for services rendered may not appropriate such fees to the payment of salaries or expenses of the office, but must pay them into the state treasury as provided by law.

We have not in detail taken up the different objections to chapter 95, but have considered all of them, and in our conclusions as above set forth have tried to answer all of said objections in such manner as to guide the heads of the different departments and

offices as to their duties, as also to advise the respondent auditor of her duties.

There are some items of legislation in chapter 95 which respondent contends should not be contained in the general appropriation bill. If she is right in that contention, it would not affect the validity or constitutionality of the rest of the bill and it is not necessary that we at this time pass on these questions. The fact is they are hardly within the issues. When these matters are properly before us it will be time for us to decide whether these provisions are constitutional or not.

Let the writ issue as prayed.

LOCKWOOD and McALISTER, JJ., concur.