[Civil No. 4023. Filed December 19, 1938.]

[85 Pac. (2d) 705.]

D. C. O'NEIL, FRANK LUKE and THAD M. MOORE, as Members of the State Tax Commission of the State of Arizona, Appellants, v. FRANK GOLDENETZ, Doing Business Under the Firm Name and Style of GOLDENETZ PRINTING COMPANY, Appellee.

Mr. Joe Conway, Attorney General of Arizona, and Mr. W. E. Polley, his Assistant, for Appellants.

Mr. John M. Levy and Mr. K. Donald Wren, for Appellee.

LOCKWOOD, J.—This is an appeal by the State Tax Commission, hereinafter called defendant, from a judgment in favor of Frank Goldenetz, hereinafter called plaintiff. The facts of the case are not seriously in dispute, and may be stated as follows, the real question being the legal inferences to be drawn therefrom.

In 1935 the legislature, at its regular session, adopted chapter 79 which reads, so far as material, as follows:

"Section 1. *Horse-racing and dog-racing meets; application for permit; fee.* Horse-racing and dog-racing meets may be held in this state only in the manner provided herein. Any person, co-partnership,

association, or corporation desiring to hold a horse-racing or dog-racing meet shall make application for a permit therefor to the state tax commission. . . .

"Sec. 2. *Granting application; license fee.* If the commission, after investigation, shall find that the reputation of the applicant for honesty, integrity, and fair dealing is good, and that the plan submitted for such meeting is not objectionable, it may grant the application. . . .

"Sec. 5. *Parimutuel machines; revenue.* The use of parimutuel machines at racing meets held as herein provided is hereby authorized, under rules and regulations to be prescribed by the commission. The commission shall receive 4 per cent. of all moneys received from parimutuel sales, for the privilege of conducting such machines and the owner and/or operator of such machines shall receive 9%. . . .

"Sec. 6. *Receipts to be paid state treasurer.* All moneys collected by the commission under the provisions of this act shall be transmitted to the state treasurer, by a bonded certified public accountant or a bonded public accountant certified by the state, who shall place the same in the general fund."

In pursuance of this act the defendant granted to certain racing interests a right to conduct horse racing at Phoenix during January, 1938, and the state fair commission entered into an agreement with these interests permitting them to use the race-track at the state fair grounds for that purpose. The fair commission apparently considered it necessary that some organization be set up to look after the commission's interest in the meet, and selected one Steve Brody as a member of what was called the racing commission, his salary being paid by the state fair commission, although he also had a commission as inspector without salary from the tax commission, apparently for the purpose of allowing him some authority at the meet. Thereafter the defendant, in executive session, adopted a set of rules and regulations for it. These rules covered not only the operation of parimutuel machines

but the conduct of horse racing in general at all meets authorized by the defendant. Shortly before the meet was to start, the fair commission asked the tax commission to have a number of copies of the rules printed for use at the meet, but was told by the chairman of the tax commission that the latter had no funds with which to have the rules printed, and that if the fair commission desired them it would have to bear the expense itself. In some manner, not apparent from the record, Brody secured a copy of these rules and regulations, and submitted them to plaintiff, requesting him to have them printed. A proof was made which was submitted to Brody, to Frank Brophy, a member of the fair commission, and to Joseph M. Peggs, the director of the state income tax division of the defendant. The proof was checked against the original rules and regulations in the minutes of the defendant by two of the employees of the income tax division, under the direction of Peggs, who then O. K.'d the proof, and returned it to plaintiff, whereupon they were printed, and twenty-five copies delivered by plaintiff to Peggs, and the other seventy-five copies sent to the fair commission. All copies left after the meet were eventually returned to the defendant and stored by it. Thereafter plaintiff prepared a claim for the value of the printing, and took it to the fair commission, but was told that he would have to submit it to the tax commission, as it was the body which should pay the bill. He did this, and the claim was rejected, whereupon this suit was brought. The trial court, after hearing the evidence, rendered judgment in favor of plaintiff, apparently on the theory that while the original order had been made by an employee of the fair commission, yet the conduct of the tax commission was such that it was estopped from denying that it had ratified the order, whereupon this appeal was taken.

■ There are a number of assignments of error, which we shall consider in accordance with the legal questions raised thereby. The first is whether or not the tax commission had the authority to have the rules printed, for if it did not, there is no need of considering anything else. This authority is found, if at all, in the first sentence of section 5, *supra,* which reads as follows:

"The use of parimutuel machines at racing meets held as herein provided is hereby authorized, *under rules and regulations to be prescribed by the commission.*" (Italics ours.)

It is obvious that the tax commission alone has specific authority to determine the rules under which parimutuels may be conducted at a race meet in Arizona. These rules, of course, must first be formally adopted by the commission, and admittedly this was done. But does this exhaust the commission's authority in this respect? In order to be effectual, such rules must not only be prescribed by the commission, but they must in some way, be made accessible to all those affected thereby, so that they may know whether the rules are being obeyed or not. It is true that theoretically speaking the records of the commission, being public records, are open for inspection at all reasonable times to any person, and interested parties might have discovered what these rules and regulations were by an examination of such records. But in view of the circumstances under which parimutuels are conducted, and the large number of people who are interested in knowing the legal and proper method of handling them, we think it would be a narrow construction, indeed, to say that the tax commission, under a statute which authorizes it to "prescribe" rules and regulations, is not impliedly authorized to put them into form so that they would be conveniently accessible to the many in-

terested parties. We are of the opinion, therefore, that the defendant had the authority to have printed and distributed, in such manner as seemed to it to be proper, all necessary copies of the rules and regulations which it had prescribed as aforesaid.

■■ The next question is, Did it order this printing done, or was the order given by some unauthorized person for whose acts it is not responsible? The record shows that plaintiff did not contend there was any specific order made by the commission itself, but relies upon ratification and estoppel. This must arise, if at all, out of the conduct of Peggs, the chief of the income tax division, for he is the only person connected with the tax commission whose conduct could, in any manner, be considered as constituting either ratification or estoppel. We think the plaintiff may not rely upon ratification, for ratification must necessarily rest upon full knowledge by the principal of the facts or things to be ratified. *Brutinel* v. *Nygren,* 17 Ariz. 491, 154 Pac. 1042, L. R. A. 1918F 713; *Grunow Memorial* v. *Davis,* 49 Ariz. 277, 66 Pac. (2d) 238. And there is no evidence that any member of the tax commission knew anything about the printing of the rules until long after the work had been completed.

■ The trial court, however, might reasonably find that the tax commission was estopped from denying that it had ordered the printing to be done. It had placed its employee Peggs in such a situation that the ordinary person dealing with him might well suppose that he was authorized by the commission to approve the order for the printing. When plaintiff went to Peggs for a check of the proof, it was checked without question, and no suggestion was ever made to plaintiff that the defendant would not pay for it. Peggs requested that the first twenty-five copies of the rules be sent to defendant after they were printed, and all of the copies which were left over after the close of the

meet ultimately came into the possession of the commission.

Much has been made of the fact that plaintiff originally presented his bill to the fair commission, rather than to the tax commission, but we think it is too harsh a rule, in view of the many bodies and commissions operating under the authority of the state of Arizona, to hold that the ordinary citizen and taxpayer who honestly makes a mistake as to which particular body should be billed for services he has rendered on the faith and credit of and for the state itself, should be held remediless because he has made an error as to which particular body he should present the bill, if he corrects that error in a timely manner. We think, therefore that the conclusion of the trial court that the tax commission had authority to order the printing in question to be done and that it is estopped from questioning the fact that it did order such printing, is sustained by the law and the evidence.

The next objection is that the legislature made no appropriation for the carrying out of chapter 79, *supra,* and such being the case, the claim cannot lawfully be paid. It is, of course, true, and we have held it repeatedly, that no money may be drawn from the state treasury without an appropriation lawfully made, either by the legislature or by the Constitution. But it is equally true that this appropriation need not be made in express language, but may be implied from the language of the statute, the only thing which is necessary being that it should reasonably appear that the legislature intended that the money should be expended for that particular purpose. *Windes* v. *Frohmiller,* 38 Ariz. 557, 3 Pac. (2d) 275. When, as in this case, the legislature has stated that certain things may be done by a public officer, and he is supplied with funds by an appropriation for the general operation of his office, as was the case with the tax commission,

there is an implied authorization to the officer to spend the money for that purpose out of the appropriation made by the legislature. The printing of the rules in question was, in our opinion, a proper charge against the operation fund of defendant provided by the legislature in the general appropriation bill of 1937 (Laws 1937, chap. 73).

■■ But it is urged that long before the making of the contract for the printing in question, the operations fund had been exhausted, and that under the rule laid down by us in *Wiggins* v. *Kerby,* 44 Ariz. 418, 38 Pac. (2d) 315, the tax commission could not properly approve the claim in question. We think defendant has misunderstood the effect of the decision just cited. It is quite true that notwithstanding the provision in chapter 79, *supra,* which authorized the printing of the rules in question, when the commission found that its fund available for that purpose had been exhausted, it could have declined to order the printing or to ratify in any manner an unauthorized order therefor, and it could not have been compelled to act, for a public officer cannot be compelled to incur official obligations when no appropriation is available for that purpose. But this does not mean that if an obligation, which is authorized by law, has been incurred and there are no funds appropriated and available for its payment, that the claim is illegal and must be rejected. Section 35, Revised Code 1928, recognizes that a situation precisely like the one in question may arise. This section reads as follows:

*"Certificate to issue where no appropriation.* In all cases where the law recognizes a claim for money against the state, but no appropriation shall have been made by law to pay the same, the auditor shall audit and adjust the same if presented to him, and give the claimant a certificate of the amount thereof, under his

official seal, if demanded, and shall report the same to the legislature.''

We think under the law and the facts the trial court properly ordered the defendant to approve the claim so that it might be submitted to the auditor for her consideration. If it appears when it reaches her that the claim is a legal one, but cannot be paid because there are no funds available to pay it, she will doubtless proceed in the same manner as with other just debts of the state which are in a similar situation.

The judgment of the superior court is affirmed.

McALISTER, C. J., and ROSS, J., concur.