[Civil No. 4078. Filed June 19, 1939.]

[91 Pac. (2d) 705.]

STATE OF ARIZONA, GUY M. JACKSON, Secretary of Board of Directors of State Institutions, and ANA FROHMILLER, State Auditor, Appellants, v. C. A. ANGLE, Appellee.

14

Mr. Joe Conway, Attorney General, and Mr. Charles Bernstein, his Assistant, for Appellants.

Mr. T. E. Scarborough and Mr. George M. Sterling, for Appellee.

LOCKWOOD, J.—C. A. Angle, plaintiff herein, suing for himself and as assignee, seeks to recover judgment against the state for the difference between the amount paid to him and his assignors as salaries authorized and appropriated for that purpose by subdivision 18 of section 1 of chapter 73 of the regular Session Laws of 1937, and the minimum wage fixed by the Arizona highway commission under the authority of section 1350, Revised Code of 1928, as amended by section 1, of chapter 12 of the regular Session Laws of 1933, which reads, so far as material, as follows:

*"Hours of Labor On Public Work; Wages.* Eight hours, and no more, shall constitute a lawful day's work for all persons doing manual or mechanical labor employed by or on behalf of the state, or of any of its political subdivisions except in an extraordinary emergency, in time of war, or for the protection of property or human life; in such cases the persons working to exceed eight hours each day shall be paid on the basis of eight hours constituting a day's work. Not less than the minimum *per diem* wages fixed by the state highway commission for manual or mechanical labor performed for said commission or for contractors performing work under contract with said commission, shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. . . . "

The complaint contains seventeen causes of action, and each one is substantially the same except as to the name of the assignor, the amount of money claimed due, and the character of the labor performed by the latter.

Demurrers to the complaint were overruled, and the defendant electing to stand thereon, judgment was entered in favor of plaintiff, whereupon this appeal was taken.

The demurrers necessarily admit the substantial allegations of the complaint, and we, therefore, state the facts as follows. Causes of action numbers 1, 2, 9, 12 and 15 are for manual labor as watchmen at the capitol building. Causes of action numbers 3, 5, 6, 10, 13, 14, 16 and 17 are for manual labor as janitors. Cause of action number 7 is for manual labor as an elevator operator, and cause of action number 11 is for labor as an engineer at the same place. Causes of action numbers 4 and 8 are for manual labor as gardeners on the capitol grounds.

The highway commission, acting under the authority of section 1350, *supra,* as amended, had, previous to August 1, 1937, fixed a minimum wage for state em-

ployees of the class to which plaintiff and his assignors belonged, and on that date had changed such wage. The general appropriation bill adopted by the thirteenth legislature, in March, 1937, appropriated money in subdivision 18 thereof, in part, as follows:

"Capitol Buildings and Grounds.

| | For the 26th Fiscal Year | For the 27th Fiscal Year |
|---|---|---|
| Salaries and Wages: | | |
| Watchman (3 at $1,350.00 each) | $4,050.00 | $4,050.00 |
| Watchman—Periodic | 168.75 | 168.75 |
| Engineer | 1,920.00 | 1,920.00 |
| Elevator Operator | 1,080.00 | 1,080.00 |
| Janitors (6 at $972.00 each) | 5,832.00 | 5,832.00 |
| Janitor—Periodic | 283.50 | 283.50 |
| Labor—Periodic | 4,218.75 | 4,218.75" |

Plaintiff and his assignors entered the service of the state at various times before January 15, 1938, and from and after their employment and during the 26th fiscal year, up to June 15, 1938, were paid for their services upon the basis of the amount thus above appropriated as being the annual salary intended by the state to be paid for services of the character performed by plaintiff and his assignors, to wit, $1,350 per year for watchmen, $972 per year for janitors and gardeners, $1,080 per year for elevator operator, and $1,920 per year for engineer. The amount sued for in each cause of action is equal to the difference between the amount fixed in subdivision 18 as the pay which would be due at the annual rate above set forth, and that which would be due if wages were paid on the basis fixed by the state highway commission. No formal claim for the difference was made until June 15, 1938.

The question before us is whether plaintiff and his assignors were entitled to be paid at the rate fixed by

the annual appropriation bill for the various classes of services rendered, or at the rate fixed by the highway commission, under section 1350, *supra,* as amended.

It is the contention of plaintiff that this last section, being general legislation, fixes definitely the wage which must be paid to state employees of the class referred to therein, and that the failure by the legislature to appropriate a sufficient amount in the general appropriation bill to pay the wages for their services cannot affect the right of plaintiff to recover the minimum wages fixed by the highway department under the section.

It is the position of defendant, (a) that the services rendered were not mechanical or manual labor within the meaning of section 1350, (b) that section 2618, Revised Code of 1928, which reads so far as material as follows:

"No officer or state agency shall contract any indebtedness on behalf of the state, nor assume to bind the state in excess of the money appropriated, unless expressly authorized by law,"
and which is a part of the state Financial Code, was expressly made a part of the appropriation act of 1937, in the following language:

"Section 2. The appropriations herein made are subject to the provisions of the State Financial Code,"

and being later legislation than the Minimum Wage Law, repeals the latter as far as plaintiff's claims are concerned, so that the appropriation made in the general appropriation bill of 1937 was, in effect, a limitation upon the indebtedness which could be incurred by the defendant for the purposes set forth in the act, and that any attempt to create a debt in excess of that amount was void. We shall consider these defenses in their order.

█ It is urged that in the case of *State* v. *Ash,* 53 Ariz. 197, 87 Pac. (2d) 270, 273, we have, in effect, held that services of the nature set up by plaintiff are not mechanical or manual labor. With this contention, we cannot agree. If there be such a thing as manual labor, we think the work of gardeners, janitors and watchmen certainly falls within that classification, while the work of an engineer is undoubtedly mechanical labor. In the Ash case we said, referring to section 1350, *supra*:

" . . . Its purpose was to protect the man whose work was that of a mechanic or manual laborer in the usually accepted sense of these words, and whose tenure was, therefore, normally so limited and uncertain in duration that he was usually paid wages by the day rather than salary by the month or year, and whose total annual compensation was generally uncertain and fluctuating.

"This does not mean, however, that the minimum wage law does not apply to employees whose occupation is, within the generally accepted sense of the words, truly mechanical or manual labor, merely because it may happen that for some reason or another their compensation may have been fixed on an annual or monthly basis rather than a *per diem.* The method of compensation is but one of the tests used to determine the real issue, and it cannot be used to evade the law."

█ While it is true that under the general appropriation bill the tenure of the plaintiff and his assignors was fairly certain and their total annual compensation was not uncertain nor fluctuating, yet work of the character performed by them is ordinarily both fluctuating in tenure and uncertain in compensation, and the classification set up in section 1350, *supra,* refers to the generally accepted character of any given type of work, and is not affected by the fact that labor performed by a particular individual does not have all the usual conditions of the type. One gardener

may happen to retain his position for life, while another may be employed but for a day, but they are both manual laborers, for it is the general custom, and not the particular instance, which determines the classification.

We are of the opinion that plaintiff and his assignors were all within section 1350, *supra*, as amended, as manual or mechanical laborers.

But does section 2618, *supra*, change the situation? It was originally adopted as part of the Financial Code of 1922 (Laws 1922, chap. 35). One of the principal purposes of that Code was to prevent the incurring of any indebtedness in excess of the amount appropriated by the legislature, and the only exception thereto allowed by the section was when an officer was expressly authorized by law to exceed the appropriation. The intent and the value of the rule thus laid down cannot be questioned. It applies by its terms to all appropriations made by the legislature from that time on, unless suspended or repealed by the authority which adopts it. This provision was reenacted in the Code of 1928.

In chapter 48 of the regular Session Laws of 1933, the legislature, by a special act, did suspend the application of a part of the Financial Code for the fiscal years 1933–1935, but at the end of the specified two years the Code automatically resumed its full force. It is, however, the unquestioned rule that a later valid act of the legislature supersedes all previous acts with which it is in conflict, whether it expressly repeals the earlier provisions or not. *State Board of Health* v. *Frohmiller*, 42 Ariz. 231, 23 Pac. (2d) 941; *City of Bisbee* v. *Cochise County*, 44 Ariz. 233, 36 Pac. (2d) 559. What then is the latest legal expression of the legislative will on the subject?

A number of cases have come before us raising the question as to how far the biennial ap-

propriation bill can contain in its provisions legislation other than the mere appropriation of money for the purposes set forth therein. *Carr* v. *Frohmiller,* 47 Ariz. 430, 56 Pac. (2d) 644; *Sellers* v. *Frohmiller,* 42 Ariz. 239, 24 Pac. (2d) 666; *State Board of Health* v. *Frohmiller, supra; Andrews* v. *State,* 53 Ariz. 475, 90 Pac. (2d) 995, decided May 29, 1939. After a careful review of the cases, we think the rule laid down thereby may be stated as follows. The general appropriation bill can contain nothing but the appropriation of money for specific purposes, and such other matters as are merely incidental and necessary to seeing that the money is properly expended for that purpose only. Any attempt at any other legislation in the bill is void. An attempt, therefore, to repeal the general legislation set up in section 1350, *supra,* in the general appropriation bill would necessarily be invalid and of no effect. Since section 1350, *supra,* as amended in 1933, was the latest general legislation on the subject, it supersedes section 2618, *supra,* in so far as the two are in conflict. We see, however, no conflict in the two. In section 2618 the state officers are specifically authorized to contract any indebtedness, even though in excess of the appropriation, if it be expressly authorized by law. It would seem that a direction by the legislature to pay certain wages to be fixed by the highway commission is not only an express authorization but a specific order to all public officers to pay such wages.

A somewhat analogous situation arose in the case of *O'Neil* v. *Goldenetz,* 53 Ariz. 51, 85 Pac. (2d) 705, 708, and therein we said:

"It is quite true that notwithstanding the provision in chapter 79, *supra,* which authorized the printing of the rules in question, when the commission found that its funds available for that purpose had been exhausted, it could have declined to order the printing or to ratify in any manner an unauthorized

order therefor, and it could not have been compelled to act, for a public officer cannot be compelled to incur official obligations when no appropriation is available for that purpose. But this does not mean that if an obligation, which is authorized by law, has been incurred and there are no funds appropriated and available for its payment, that the claim is illegal and must be rejected.''

If, therefore, when the board of directors of state institutions found that the appropriation for services of the character set forth in subdivision 18, *supra,* was exhausted, they had discharged plaintiff and his assignors for that reason, no legal exception could have been taken to their action. But having continued to employ them to perform services which were certainly intended by the legislature to be continued during the full year, we think that the employment was ''authorized by law,'' and since the latest general law on the subject fixed the wages to be paid such employees at a certain figure, the state is legally indebted to them in the amount sued for. *O'Neil* v. *Goldenetz, supra.*

It is urged that the legislature certainly never contemplated a situation like the present one when it enacted the Minimum Wage Law, and that this is evidenced by the fact that in chapter 42 of the regular Session Laws of 1939 it again amended section 1350, *supra,* by adding thereto the following provisions:

''(b) Not less than the minimum *per diem* wage fixed by the Arizona state highway commission for manual or mechanical labor performed for said commission, or for contractors performing work under contract with said commission, shall be paid to any person doing manual or mechanical labor, employed by or on behalf of the state or any political subdivision thereof. The commission shall determine and publish such minimum *per diem* wage not later than April 15 of each odd numbered year. . . .

''(d) This section shall not be construed to apply to any position or employment the salary or wage

for which is determined by the state general appropriation therefor.''

Were the provisions of section 1350, *supra,* as it existed in 1933, ambiguous in their nature, we might well consider the subsequent act of the legislature as throwing light on its intention in 1933, but the section is plain and unambiguous in its language, and when such is the case we must construe it as written, unless it is impossible or unworkable in its nature. *Palmcroft Dev. Co.* v. *Phoenix,* 46 Ariz. 200, 49 Pac. (2d) 626, 103 A. L. R. 802; *State Tax Com.* v. *Shattuck,* 44 Ariz. 379, 38 Pac. (2d) 631; *Automatic Reg. M. Co.* v. *Pima County,* 36 Ariz. 367, 285 Pac. 1034; *Industrial Com.* v. *Price,* 37 Ariz. 245, 292 Pac. 1099.

That it never occurred to the legislature that the Minimum Wage Law authorized and required the payment of wages greater than those provided in the general appropriation bill for certain state employees may be true. That the action of plaintiff and his assignors in accepting without question compensation on the basis of the annual appropriation bill for many months, and then claiming the greater amount to which they were entitled by the terms of section 1350, *supra,* may be characterized as not according to the best ethical standards, is at least arguable. But this court must declare the law as it is, leaving the question of whether equity requires that an appropriation shall be made to pay, to the judgment of the legislature.

We are compelled to hold, as a matter of law, that the defendant State of Arizona is legally indebted to the plaintiff in the amount set forth in the judgment of the trial court, and such judgment is necessarily affirmed.

McALISTER, J. (Specially Concurring).—I concur in the opinion of Judge LOCKWOOD. It is well-stated and, in my judgment, reaches the correct con-

clusion as to the law of the case. My only reason for making this special statement is that I do not feel that there is under the facts any occasion even to question the ethical or moral right of the plaintiff and his assignors to recover from the state, if they can, what the opinion so clearly shows they are entitled to as a matter of law.

It is true that in March, 1937, the thirteenth legislature appropriated the amount it intended the plaintiff and his assignors to receive each month, during the two-year period beginning July 1, 1937; that on August 1st thereafter the highway commission raised the minimum *per diem* wages to be paid manual and mechanical workers employed by the state or any of its political subdivisions, among whom were the plaintiff and his assignors; and that, instead of claiming the increased amount from that time on, they continued for months to accept that given them in the general appropriation bill and only a short time before the one-year period of limitation had run against any portion of the increased wage filed suit therefor. The ethics of their act in asking for the additional sum, after accepting the lesser amount, is said to be "arguable." To my mind, their action in this respect is not questionable from an ethical, moral or any other standpoint. They were entitled legally to the additional sum but they realized that if it were paid them each month it would mean that the appropriation would be exhausted before the year expired and this would leave no funds with which to continue the work for the remainder of the year, in which event they would either be discharged or compelled, if they worked, to run the risk of the legislature's taking care of the amount due them at its next regular session. With this situation confronting them, there is no reason whatever why they should not have waited as long as the statute of

limitations permitted to initiate proceedings to collect the increase.

And besides, this course rendered possible the doing of the work they were employed to perform and at the same time enabled them to live and receive for their labor the full amount the Minimum Wage Law intended them to have, provided, it is true, the lawmaking body should later decide that the state should live up to the principle the eleventh legislature established as the state's public policy when, by passing chapter 12, Session Laws of 1933, it amended section 1350, Revised Code of 1928, in such a way as to provide that all those performing manual or mechanical labor for the state or any of its political subdivisions should be paid at least the minimum *per diem* wages fixed by the highway commission for that class of work.

The fact that the legislature, in making the appropriation in March, 1937, for the care of the capitol building and grounds, may not have thought any change in the wage rate made by the highway commission would affect the wages of those employed for this work during the biennium which that appropriation covered is wholly immaterial. It had given that commission the power to fix the minimum *per diem* to be paid those performing manual or mechanical labor for the state or any of its political subdivisions and made the wages so fixed, whether an increase or decrease, binding upon the employer and immediately effective. This being true, it became the duty of the officer or officers controlling the employment to pay the new wage from the day it was fixed by the commission and of plaintiff and his assignors to work for no less, *City of Glendale* v. *Dixon,* 51 Ariz. 206, 75 Pac. (2d) 683, but the officers did not do this because the appropriation was insufficient and the plaintiff and his assignors, though anxious to receive the increased amount, did not insist on its being paid them for the

reason just stated and perhaps for the further reason that they were somewhat fearful that doing so might to some extent jeopardize their jobs. Under these circumstances it is, to my mind, unthinkable that the action of plaintiff and his assignors in seeking to recover the amount the law says they are entitled to should be characterized as "arguable," from an ethical, moral or any other standpoint. The fact that they accepted the lessor amount until the one-year limitation had almost run against the additional sum in order that the appropriation might not be exhausted before the end of the year and their continuance in their jobs rendered doubtful does not, as I see it, furnish any more ground for questioning their action, morally or ethically, than it does legally.

ROSS, C. J. (Dissenting).—I am very sorry not to be able to agree with the other members of the court as to the disposition of this case. It seems to me the question for decision is, Which is the correct rule for determining the compensation of employees of "the capitol building and grounds" for the fiscal years 1937–1938 and 1938–1939, the one announced by the legislature or the one under the Minimum Wage Law?

The capitol building and grounds are under the charge and control of the board of directors of state institutions. Section 2918, Rev. Code 1928. The legislature has not by any provision of law designated the number and kind of employees for the capitol building and grounds but has left that, under the provisions of sections 62 and 2922, Id., to said board. The legislature, presumably upon a list of such employees, together with a schedule for salaries and wages to be paid them, furnished by the board, on March 23, 1937, provided in the general appropriation bill (chap. 73, Laws of 1937), as follows:

"Section 1. The following sums herein set forth are hereby appropriated for the fiscal years beginning July 1, 1937, and ending June 30, 1938, hereinafter designated as the 26th Fiscal Year, and beginning July 1, 1938, and ending June 30, 1939, hereinafter designated as the 27th Fiscal Year, for the several purposes and objects as hereinafter specified, . . . ''

Here follow 74 subdivisions of section 1, subdivision 18 being as follows:

"Subdivision 18. Capitol Buildings and Grounds.

| | For the 26th Fiscal Year | For the 27th Fiscal Year |
|---|---|---|
| Salaries and Wages: | | |
| Salary-Custodian | $ 2,400.00 | $ 2,400.00 |
| Watchman (3 at $1,350.00 each) | 4,050.00 | 4,050.00 |
| Watchman—Periodic | 168.75 | 168.75 |
| Engineer | 1,920.00 | 1,920.00 |
| Elevator Operator | 1,080.00 | 1,080.00 |
| Maid | 972.00 | 972.00 |
| Head Gardener | 1,620.00 | 1,620.00 |
| Janitors (6 at $972.00 each) | 5,832.00 | 5,832.00 |
| Janitor—Periodic | 283.50 | 283.50 |
| Porter | 1,455.00 | 1,455.00 |
| Labor—Periodic | 4,218.75 | 4,218.75 |
| Total Salaries and Wages | $24,000.00 | $24,000.00 |
| Operation | 10,000.00 | 10,000.00 |
| Repairs and Replacements | 1,200.00 | 1,200.00 |
| Total Appropriation | $35,200.00 | $35,200.00 |
| | | $70,400.00." |

These are the sums the board of directors of state institutions may expend during the fiscal years 1937–1938 and 1938–1939 for the objects and purposes named. Such board may not expend or contract any sum or sums, as I view it, in excess of these appropriations.

As I understand it, the board of directors of state institutions employed and paid the help, including plaintiff and his assignors, for the capitol building and grounds in accordance with the appropriation, which items of course were considered by the state tax com-

mission in fixing the rate of taxes for the biennium 1937–1938 and 1938–1939.

In August, 1937, the state highway commission, in disregard of the items of the budget for state expenses, raised hourly wages of such employees to 62½¢. The plaintiff and his assignors accepted the wages or salaries as fixed by the legislature and thereafter sued the state for the difference, amounting to $6,311.28, and on this sum they ask 6 per cent. from June 21, 1938.

The legislature is the body that makes the laws. It created the highway commission and gave it all the powers it possesses. The legislature can take from the commission any power it has given it. It may do this directly or indirectly. While the legislature has said the wage standards fixed by the highway commission shall be paid certain employees of the state and its subdivisions, that standard cannot be substituted for a salary or wage fixed by the legislature itself.

To allow a recovery in this case is to ignore the legislative intent as expressed in the general appropriation bill. An intent clearly expressed in such bill is just as enlightening and binding as if expressed in any other legislation. As before said, the plaintiff and his assignors were appointed or employed under the provisions of sections 62 and 2922, *supra*. Section 62 will bear quotation in full. It reads:

"§ 62. *Deputies; employees; salaries.* Every state officer, board or commission may appoint deputies, if authorized by law, and may appoint assistants, clerks, and employees for the prompt discharge of the duties of the office. *No salary or compensation, however, shall be paid unless the same is authorized in the appropriation for that office, board or commission. The salaries and compensation of all deputies, assistants, clerks and employees shall be in the amount as fixed in the appropriation for that office in the general appropriation bill.*" (Italics ours.)

This section has not been repealed or amended. It stands as an expression of the legislative intent today as much so as it did when it was passed. It was suspended for two years. See *State Board of Health* v. *Frohmiller,* 42 Ariz. 231, 23 Pac. (2d) 941. According to such section, salaries and compensation of plaintiff and his assignors is the "amount as fixed in the appropriation for that office in the general appropriation bill." Under such section, the board of directors of state institutions is not permitted to pay out for the capitol building and grounds any sum other than the appropriation made therefor.

Another straw indicating clearly the intention of the lawmaking body is found in section 2 of the 1937 general appropriation bill reading:

"Section 2. The appropriations herein made are subject to the provisions of the State Financial Code. . . ."

Section 2618, Revised Code of 1928, part of the Financial Code, provides that

" . . . No officer or state agency shall contract any indebtedness on behalf of the state, nor assume to bind the state in excess of the money appropriated, unless expressly authorized by law. Amounts paid from the appropriations for personal service of any officer or employee of the state shall be full payment for all services rendered between the dates specified on the payroll and no additional sum shall be paid to such officer or employee. . . . "

The reference in the general appropriation bill of 1937 to the Financial Code expresses the legislative intent, wish and desire, and that is, or should be, the controlling factor so far as this court is concerned. As we have seen, the act of the highway commission in August, 1937, fixing wages as 62½¢ per hour could not possibly set aside the act of the legislature fixing a different compensation for employees of the capitol

building and grounds. It is true the minimum wage statute quoted by Judge LOCKWOOD'S opinion says not less than the wages fixed by the highway commission shall be paid certain kinds of employees of the state, but that is a general rule. It cannot prevail against an act of the legislature specifically fixing wages and salaries of employees.

The legislature has said and done everything it can to keep officers and employees from exceeding budgets, which are regularly prepared by the different officers, agencies, boards and commissions of the state under law for the protection of the taxpayers, and I do not see myself how we can disregard that legislation. I believe the legislature should still "hold the purse strings."