188 P.2d 457

**MILLETT v. FROHMILLER.**

No. 5015.

Supreme Court of Arizona.

Jan. 5, 1948.

Jennings, Strouss, Salmon & Trask, J. A. Riggins, Jr. and Henry S. Stevens, all of Phoenix, for appellant.

John L. Sullivan, Atty. Gen., and John W. Rood, Chief Asst. Atty. Gen., for appellee.

UDALL, Justice.

This is an action for a declaratory judgment to determine the question as to whether any funds are available for the payment of plaintiff's claim for services rendered to the Arizona Corporation Commission (hereinafter referred to as the Commission) in the matter of a proposed rate survey to be conducted by it.

The facts necessary to a determination of the matter are as follows: Plaintiff-appellant, a certified public accountant engaged in practice in Phœnix, Maricopa, County, Arizona, on April 21, 1947, entered into a contract with the Commission to make an examination of certain public service corporations operating in Arizona. The date to be thus procured by plaintiff and his assistants was to be used by the Commission in connection with the per-formance of the duties imposed on it under Art. XV, Sec. 3 of the Constitution of Arizona, i. e., making classifications, rates, and charges of public utilities. Plaintiff worked one day (May 5, 1947) and then submitted a claim for $35 to the defendant-appellee as State Auditor for said services against: (1) the money appropriated under Chapter 11, Laws of the First Special Session, Seventeenth Legislature, hereinafter referred to as Ch. 11, (2) the money authorized to be collected under Chapter 79, Regular Session, Eighteenth Legislature, hereinafter referred to as Ch. 79, and (3) the general fund. Defendant rejected each of these claims as not properly pay-able out of the respective funds mentioned, whereupon this suit was brought. The lower court granted defendant's motion for summary judgment and judgment was entered for defendant dismissing plaintiff's complaint. From this judgment appeal was taken. The gist of plaintiff's assignments of error and propositions of law is embodied in our discussion of each phase of the case.

The first fund which plaintiff believes is available for the payment of his claim is that created by Ch. 11. Briefly, this Act appropriates $50,000 to be used by the Commission to have a survey conducted to determine the fair value of the property of the gas and electric public service corporations of the State in order to establish a proper base for rate-making purposes.

It further provides that the Corporation Commission should have a survey made employing therefor the Federal Power Commission in accordance with the terms of the Federal Power Act, 16 U.S.C.A. § 791a et seq., and Sec. 4 of the law states that: "The sum of fifty thousand dollars is appropriated to the corporation commission, *for the payment of the expenses of the federal power commission*, including but not limited to the salaries of personnel and travel expenses, in cooperation with the corporation commission in making the property investigation authorized by this act." (Emphasis supplied.)

Plaintiff, though admittedly not connected in any way with the Federal Power Commission, contends that this fund is available to him for payment of his claim for the reason that he believes that part, and that part only, of Ch. 11 which limits the use of the fund to payment of expenses of the Federal Power Commission is unconstitutional.

His argument concerning the unconstitutionality of this limitation is based upon Section 3, Article XV of the Constitution of the State of Arizona which gives "full power" to the Commission to "prescribe * * * just and reasonable rates and charges to be made and collected, by public service corporations * * *." Plaintiff's theory is that our Constitution in giving "full power" to the Commission in this regard, also, by necessary implication, gives the Commission complete discretion over the manner and method by which this power should be exercised. Therefore, any legislative attempt to direct by whom such a survey shall be made (such as was done in Ch. 11 in confining the use of the appropriated funds to the payment of the employees of the Federal Power Commission) constitutes, according to plaintiff, an attempt by the legislature to usurp the constitutional powers of the Commission.

In regard to plaintiff's contention, namely the availability of this fund for the payment of his claim, it must be emphasized that all the court need now consider is whether, in this case, the appropriation can properly be separated from the limitation put upon it. If it cannot be so separated, then the constitutionality of Ch. 11 as a whole can in nowise affect him, and this for the reason that if not separable, the appropriation stands with its limitation, or, if unconstitutional, both the appropriation and the limitation fall. In either of these instances it would not be available to plaintiff.

■■■ The law concerning the severability of statutes is well settled.

" * * * the valid part of a statute will be sustained where the valid and invalid parts are so separate and distinct that it is clear or may be presumed that the legislature would have enacted the former without the latter, if it had known of the invalidity, or, as otherwise stated, if the valid or invalid parts are not so intimately connected as to raise the presumption that

the legislature would not have enacted the one without the other, the act will be upheld so far as valid. On the other hand, the whole statute will be declared invalid where the constitutional and unconstitutional provisions are so connected and interdependent in subject matter, meaning, and purpose as to preclude the presumption that the legislature would have passed the one without the other, but, on the contrary, justify the conclusion that the legislature intended them as a whole and would not have enacted a part only." 59 C.J., Statutes, Sec. 206.

"To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted. The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed." 2 Sutherland, Statutory Construction, 3d Ed. Horack, Sec. 2404.

See also, 11 Am.Jur., Const.Law, Secs. 155, 157; 1 Cooley's Constitutional Limitations, 8th Ed., 362, 363, and note; Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Riccio v. Hoboken, 69 N.J.L. 649, 55 A. 1109, 63 L.R.A. 485; Williams v. Standard Oil Co., 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596. Even a cursory reading of Ch. 11 makes it clear that the legislature intended to there provide for a rate survey requiring the services of the Federal Power Commission. To hold that all that was intended was to provide for a rate survey to be made by any persons, group, or agency that the Commission might select would constitute gross judicial legislation. However, to support his claim of severability plaintiff calls our attention to two cases, People v. Tremaine, 252 N.Y. 27, 168 N.E. 817; and State v. Carter, 167 Okl. 32, 27 P.2d 617, 91 A.L.R. 1497. Both cases deal with the scope of limitations that can properly be included in a general appropriation bill. Neither are applicable to the Act here in question which was passed as a separate piece of legislation. The funds there appropriated are clearly wedded to the use for which they are prescribed. Any other use would be improper. Crane v. Frohmiller, 45 Ariz. 490, 45 P.2d 955; Webb v. Frohmiller, 52 Ariz. 128, 79 P.2d 510; McDougall v. Frohmiller, 61 Ariz. 395, 150 P.2d 89.

The second fund plaintiff believes is available for payment of his claim is the moneys collected under the authority of Ch. 79. This Act, in Section 1(a) thereof, provides that "To enable the corporation commission to perform its lawful duties relating to * * * rates (of public utilities) * * * the commission shall annually make an assessment against each such corporation * * *." The assessment is computed in the form of percentages of the gross operating revenue of the utilities. Sec. 2 of Ch. 79 provides for the

344

disposition of these collected funds as follows: "All moneys received by the commission under the provisions of this Act shall be paid to the state treasurer and placed in the general fund of the state."

It is plaintiff's contention that Ch. 79 constitutes at once both a method for raising such funds and also the appropriation thereof to the Commission. In support of this contention plaintiff directs our attention to Carr v. Frohmiller, 47 Ariz. 430, 56 P.2d 644 as authority for the proposition that funds collected for a specific purpose cannot be expended for another purpose. This is in accord with Art. 9, Secs. 3 and 9 of the Constitution of the State of Arizona, and we support this as a correct statement of our law.

Plaintiff then quotes from Arizona Teachers' Retirement System v. Frohmiller, 60 Ariz. 490, 140 P.2d 615, 616, in which somewhat similar language is contained, to the effect that no more apt language for an appropriation could be chosen. That case, however, concerned a mandamus proceeding brought by the Arizona Teachers' Retirement System for salaries of the Executive Secretary and Secretary thereof. The fund attacked was an amount by appropriation "transferred from the state school fund to the Arizona teachers' retirement system for the purpose of carrying out the provisions of (the) Act." Nothing further is needed to distinguish this from the case at bar where the moneys raised are directed to be placed in the general fund and the payment claimed is from that fund in the absence of an appropriation therefrom.

Finally plaintiff cites this court's decision in O'Neil v. Goldenetz, 53 Ariz. 51, 85 P.2d 705, in support of the proposition that our legislature did not intend the money raised by Ch. 79 to remain unused in the Treasury. And further, that merely giving authority to the Commission to make the assessment would not "enable" the Commission to perform its duties unless it could use the money. In the O'Neil case the Tax Commission was authorized to draw upon an *appropriation* from the general fund which had been made by the legislature for the expenses of the Tax Commission in order to pay for the publication of certain rules and regulations which, by statute, that Commission had the duty to formulate. That again is a far different situation from the one now confronting us where the attempt is not to draw from an appropriation made from the general fund, but instead, to draw from this fund itself in the absence of an appropriation.

It is clear that by the provisions of Art. 9, Ch. 10, A.C.A.1939, Budget and Financial Administration Act of 1943, the authorization by law to a state agency to employ persons in the performance of agency duties does not, in itself, constitute a right to draw on the general fund. Payment to such employees can be made only if there is an actual and proper appropriation. Obligations incurred in the absence

345

of such are null and void rendering the officials incurring them liable on their bonds.

While it is entirely possible and sometimes desirable to have set up within the limits of a single statute the duties to be accomplished, provision for raising the necessary funds, and then the appropriation of these funds to a particular department of government, such is neither the necessary or even the usual procedure. And in the face of the above statute, unless the appropriation is clearly made in the fund-raising statute, the presumption must be against it. Certainly the above statute leaves no doubt as to the rule regarding moneys placed in the general fund.

■ Where language is plain and admits of no more than one meaning, the court must enforce it according to its terms. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168. And the best guide to proper construction of an ambiguous statute is, where discernible, the intent of the legislature. Webb v. Frohmiller, supra. Here we believe the language of the statute is plain. But even if we assume it to be ambiguous we have manifest indications of legislative intent. First, Ch. 79 in Sec. 2 thereof, previously quoted, specifically directs the moneys there raised be paid into the general fund. And second, the legislature included in its general appropriation bill, c. 142 (under subdivision 46 thereof setting up an operating fund for the Corporation Commission) Item 7 being $30,000

for the 36th and another $30,000 for the 37th fiscal year for "Utility Survey Division". This item was vetoed by the Governor and did not become a law. But regardless of its final disposition it seems to indicate strongly that the legislature did not consider Ch. 79 as constituting an appropriation, for if it had, there would have been no reason for anything further. Board of Commissioners of Hamilton County v. State, 184 Ind. 418, 111 N.E. 417. For these reasons we hold that Ch. 79 does not constitute an appropriation creating an available fund to which plaintiff may look for payment of his claim.

■ Neither can any credence be given to the contention that the appropriation in Item 7 stands in spite of the veto. This is in no wise analogous to the situation in Black & White Taxicab Co. v. Standard Oil Co., 25 Ariz. 381, 218 P. 139, where there was an attempt to use the veto power in such a way as to constitute an improper exercise by our chief executive of legislative powers. Here, by his veto of Item 7, the Governor made no attempt to amend Ch. 79 as an appropriation does not exist within its borders. And there can be no doubt as to the power of the Governor to veto a separate item in the general appropriation bill. Art. 5, Sec. 7, Constitution of the State of Arizona; Fairfield v. Foster, 25 Ariz. 146, 214 P. 319.

■ Plaintiff, however, claims, in the alternative, that even if Ch. 79 does not by itself constitute an appropriation, still the

346

appropriation is completed by Secs. 10-914, 10-916, 10-918, Supplement to the Arizona Code 1939. The first two mentioned sections are rather ancillary to his argument, the real emphasis being placed upon Sec. 10-918. This latter section provides, among other things, that commissions receiving *private funds* shall deposit them with the State Treasurer and the Treasurer shall keep such funds separate. Finally, this section provides for disbursement of these funds when adequate vouchers are presented.

Sec. 10-912 directs all funds shall be placed in the general fund with six groups of exceptions, one of which is private funds. It further provides that "No money shall be received or held by the state treasurer except as authorized by law * * *." In view of this, the direction by Sec. 2 of Ch. 79 that the moneys there raised be paid into the general fund. denies the applicability of Sec. 10-918 which deals solely with private funds. Clearly Ch. 79 was never intended by the legislature to set up a private fund.

Plaintiff next presents the interesting philosophical argument that if there has been no appropriation of the funds raised by Ch. 79, and these moneys have become a part of the general fund, then they are available for the payment of any and all claims against the general fund which would make Ch. 79 unconstitutional upon two grounds. First, because the moneys might be used for a purpose other than that for which the assessment was made; and second, because it would then make of Ch. 79 not a regulatory act but a general revenue measure which would be void for the lack of uniformity. Following this, plaintiff presents us with the rule of statutory construction that where a statute will bear two constructions one of which is constitutional and the other unconstitutional, the court will adopt the construction which will make the Act constitutional. This, plaintiff alleges, should lead the court to construe Ch. 79, or Ch. 79 in conjunction with Sec. 10-918 as constituting an appropriation.

We can do no such violence to clear statutory language. Nor can we properly decide a case not before us. The only question here pertinent in regard to Ch. 79 is whether, either alone or in conjunction with Sec. 10-918, it creates a fund presently available for ·the payment of plaintiff's claim. We hold that as no money is appropriated by Ch. 79, and none appropriated for this purpose by Sec. 10-918, no fund is there created which is presently available for payment to plaintiff. A decision as to the constitutionality of the Chapter could not change this result. Therefore, that question is not properly before us and an opinion upon it would not only be of no avail to the settlement of the case at bar, but would, for that reason, be highly inappropriate.

Defendant presents the doubtful argument that the Corporation Commission

lacked authority to look to Chapter 79 for funds as no funds had accrued thereunder at the time of filing plaintiff's claim. Although we have carefully considered the questions there involved, there is no purpose in setting these forth at length as the disposition of this is determined, in any case, by our disposal of the claim under Ch. 79 itself.

 Lastly, the plaintiff contends that if funds are not available to the Commission for the payment of his claim under either Ch. 11, supra, or Ch. 79, supra, there is available a constitutional appropriation to enable the Commission to perform its duty to regulate public service corporations imposed upon it by Art. XV, Sec. 3, of the Constitution of Arizona.

Plaintiff properly concedes that a constitutional appropriation is one of necessity and exists only where no funds are otherwise available to enable an officer to perform a constitutional duty. Indicative of the rarity with which this type of appropriation has been upheld in Arizona is the fact that in the thirty-five years since statehood there are only two reported cases. In Windes v. Frohmiller, 38 Ariz. 557, 3 P.2d 275, we held that where the Constitution creates an office, and declares that the officer shall receive his salary, that amounts in law to an appropriation, and the legislature's refusal or failure to make an appropriation for such salary could not defeat its payment. There the salary, by other legislative enactments had been definitely fixed.

In the more recent case of Crozier v. Frohmiller, 65 Ariz. 296, 179 P.2d 445, we upheld the action of the Secretary of State in incurring a substantial initiative and referendum expense in the performance of his constitutional duties under Art. 4, Pt. 1, Sec. 1 of the Constitution of the State of Arizona, notwithstanding the failure of the legislature to make a sufficient appropriation therefor. However, Subsec. (15) of the same article provides that "This section of the constitution shall be, in all respects, self-executing."

In both cases we made it clear that the real test in determining whether a constitutional appropriation of state money had been made is whether the people (the supreme legislative power of the State) had in the constitution itself definitely expressed an intention that money be paid for such a purpose. In each instance to have held otherwise would, in effect, have permitted the legislature to nullify the constitutional mandate. Furthermore, in each of these cases the type of appropriation thus sanctioned was either a fixed and definite one as in the case of the officer's salary or one of definite and ascertainable limits as in the referendum matter. Neither involved giving, as would be the case here, of carte blanche authority with no limits as to the amount that could be drained from the treasury.

348

Under our system of three equal and coordinate branches of government, possibly the greatest check that the legislative department has is control of the "purse strings" and we do not believe that the people in adopting Art. XV, Sec. 3, of the Constitution, which contains no self executing clause, ever intended to there give unrestricted control of public funds to the Corporation Commission in a matter even as vital as regulating public utilities. Such a loose control would be wholly foreign to our present system of state government. Certainly plaintiff's proposal is against public policy and should not be granted unless the right is crystal clear. This article of the constitution is not a golden key to the public treasury. Where, as here, there is a constitutional duty but no constitutional appropriation to carry it out, the complete discharge of such responsibility is limited by the funds made available by the legislative department for such purposes.

In the regulation of public service corporations the Commission has the exclusive and supreme power and responsibility placed upon its shoulders by the constitution. It is evident that this power can only be fairly carried out if the Commission has information as to what are "just and reasonable rates". It can obtain such information only by an investigation or rate survey which unquestionably it has full power to make. To conduct such a survey takes funds which only the legislative department can provide.

 We have held repeatedly that no money may be drawn from the state treasury without an appropriation lawfully made, either by the legislature or by the constitution. O'Neil v. Goldenetz, supra. See also Sec. 10-923. Here, as we have pointed out, there are no funds available, under any of the claimed appropriations for the payment of plaintiff's services, hence the State Auditor properly refused to allow the claim or issue a warrant therefor.

Judgment affirmed.

STANFORD, C. J., and LaPRADE, J., concur.