457 P.2d 951

BOARD OF SUPERVISORS, PIMA COUN-
TY, State of Arizona; Thomas Jay, Dennis
Weaver, Pete Rubi; Members, Board of
Supervisors, Pima County, Arizona; and
Gary K. Nelson, Attorney General, State
of Arizona, Appellants,

v.

Roy Alan ROBINSON, for himself and others
similarly situated, Appellee.

No. 2 CA–CIV 664.

Court of Appeals of Arizona.

Aug. 6, 1969.

Rehearing Denied Sept. 3, 1969.
Review Granted Oct. 21, 1969.

William J. Schafer III, Pima County
Atty., by Rose Silver, Chief Civil Deputy
County Atty., Tucson, Gary K. Nelson,
Atty. Gen., by Sandra D. O'Connor, Asst.
Atty. Gen., Phoenix, for appellants.

Anthony B. Ching, Tucson, for appel-
lee.

Moise E. Berger, Maricopa County Atty.,
by William Carter, Deputy County Atty.,
Phoenix, for amicus curiae County of
Maricopa.

KRUCKER, Judge.

Plaintiff-appellee, Roy Alan Robinson,
for himself and others similarly situated,
sought to enjoin defendants-appellants, the
Board of Supervisors, Pima County, State
of Arizona, from enforcing the twelve-
month residency requirement for public
medical care of the indigent sick under A.
R.S. § 11–297. The trial court, sitting
without a jury, on October 20, 1968, grant-
ed a permanent injunction against the en-
forcement of the requirement, declaring
that part of the statute severable and un-
constitutional. The Board of Supervisors
appealed.

Construing the facts most favorable
toward sustaining the judgment, they are
as follows.

A.R.S. § 11–297 provides:

"A. *Except in emergency cases* when
immediate hospitalization or medical care
is necessary for the preservation of life
or limb *no person shall be provided hos-
pitalization, medical care or outpatient
relief* under the provisions of this article
*without first filing* with a member of

the board of supervisors of the county in which he resides a statement in writing, subscribed and sworn to *under oath, that he is an indigent*, an unemployable totally dependent upon the state or county government for financial support, or an employable of sworn low income without sufficient funds to provide himself necessary hospitalization and medical care, *and that he has been a resident of the county for the preceding twelve months.*

"B. No person shall be admitted to the hospital or receive relief without an order from a member of the board.

"C. Any person who files a false or untrue statement with the board for the purpose of obtaining hospitalization, medical care or outpatient relief for himself, shall be guilty of a misdemeanor." (Emphasis supplied.)

Plaintiff is an indigent who was severely injured in a fire. He was refused medical care by Pima County's Board of Supervisors solely on the basis that he had not continuously resided in Pima County for the preceding twelve months. Plaintiff's condition did not require emergency care. The trial court held the residency provision unconstitutional and severed it from the statute.

On April 21, 1969, the United States Supreme Court held that a District of Columbia statute which denied welfare assistance to residents who had not resided within the jurisdiction for one year was unconstitutional. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Defendant's appeal in this case presents challenges to all the possible grounds under which the twelve-month residency requirement could have been held unconstitutional: (1) The Commerce Clause, (2) The Privileges and Immunities Clause, (3) The Due Process Clause and freedom of movement, and (4) The Equal Protection Clause.

The ultimate question is whether the *Shapiro* reasoning should govern the instant case. The Supreme Court expressly stated:

"We imply no view of the validity of waiting period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth." (Emphasis in original) 89 S.Ct., at 1333 n. 21.

The Court, however, did discuss the various constitutional grounds defendant presents in this case. It held that a twelve-month residency requirement in a welfare context violated the rights of citizens to travel interstate without penalty. It held that the classification of indigents on the basis of their lack of one-year residence had no valid *compelling* governmental interest and thus violated the equal protection clause. It held that such a restriction, assuming it was adopted by Congress, still violated the due process clause as being unjustifiably discriminatory. Defendant, in this case, maintains that the instant case can and must be distinguished from *Shapiro*. We disagree.

Defendant argues that the residency requirement does not inhibit the right to travel, either as a part of the commerce clause or the privileges and immunities clause. The Supreme Court discussed this point in depth in *Shapiro* and held that the right to travel can be ascribed to no particular constitutional provisions. However, it does stand for the general proposition that the deterring of migration of indigents is a constitutionally impermissible purpose.

The Supreme Court, in *Shapiro*, discussed many of the arguments in favor of the restrictions under the Equal Protection Clause. The Court found that there was no evidence that the state took a census of non-qualifying indigents to facilitate planning of the welfare budget. The fiscal necessity argument is the only one presented by the Board of Supervisors in support of the classification in this case, yet no facts of actual statistical use are presented in the pleadings and the transcript is not before us. The Amicus Curiae brief presents data which shows that there will be a

two percent increase in cost due to an affirmance. The trial judge in his findings of law held fiscal expediency an invalid purpose in any event. We agree. Several other arguments were presented in *Shapiro*, but not in the instant case.[1]

One last argument of defendant in this case, to wit, that the emergency treatment provision cures the statute, needs answering. In *Shapiro*, two states, Connecticut and Pennsylvania, gave qualified temporary care to newcomers. The Court, however, obviously did not believe this cured the statute's defects. We believe the lack of non-emergency medical care can as easily result in the impairment of life, limb and health as can the lack of funds to provide basic necessities. The difference between welfare payments and non-emergency medical care, in terms of basic need by the indigent, is not substantial. We believe the reasoning of *Shapiro* applies to the instant case and that the trial court was correct in holding the twelve-month residency requirement unconstitutional.

The final contention of the defendant is that the twelve-month residency requirement of A.R.S. § 11–297 is not severable as the trial court found. We disagree. The Arizona rule is as stated in Selective Life Insurance Co. v. Equitable Life Assurance Society of United States, 101 Ariz. 594, 422 P.2d 710 (1967):

"In addition, it is well settled in this state that where the valid parts of a statute are effective and enforceable standing alone and independent of those portions declared unconstitutional, the court will not disturb the valid law if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act.

McCune v. City of Phoenix, 83 Ariz. 98, 317 P.2d 537; State v. Coursey, 71 Ariz. 227, 225 P.2d 713; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457; Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658; Pinal County v. Lewis, 22 Ariz. 128, 194 P. 1101; Gherna v. State, 16 Ariz. 344, 146 P. 494." 101 Ariz., at 599, 422 P.2d, at 715.

We do not believe the legislature intended to deny all care to indigent sick, unless the one-year residency requirement were allowed. A.R.S. §§ 11–291 and 11–251 indicate clear legislative intent to provide for the indigent sick which is in no way prevented by the lack of a twelve-month residency requirement. We agree with the trial court's determination that the one-year residency requirement is severable from the general statutory provisions for medical care to the indigent sick.

The question of whether or not residency per se, as distinct from transiency, can be a constitutional restriction on care of the indigent sick has not been presented to this court. We do not believe the trial court, in striking the wording it quoted in the judgment, intended to answer the question. We therefore modify the decision below to strike only the words "for the preceding twelve months."

Judgment affirmed as modified.

HATHAWAY, J., concurs.

MOLLOY, Chief Judge (specially concurring).

The decision of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), has few attractions for me. I have difficulty in understanding how a residence requirement for welfare benefits is an unconstitutional restriction upon the "right to travel." It appears to me that the effect

1. The Court in *Shapiro* said that the one-year limit did not in fact serve as an objective test of residency, because an investigation was still made.

The Court said that if such classification minimized fraudulent receipt of money, there were less drastic means available.

The Court stated such a classification did not work to encourage early entry into the labor force, or it should equally be applied to long-term residents.

Lastly, the Court said that there was no constitutionally permissible way to keep indigents out of the state.

of *Shapiro* is to give welfare recipients greater freedom than workers in our society have. Workers are usually "married" to their jobs and are unable to travel as they would like because of what most conceive to be the economic necessities of life. But, whether understood or not, the decision is the supreme law of the land and the only question is whether it applies to the instant litigation.

This case, of course, can be distinguished on the facts. *Shapiro* was concerned with welfare programs which are, in part, federally funded, and are federally controlled. We are here concerned with charity which is completely supported by local taxes and controlled by state law. However, the reasoning of *Shapiro* leaves no room for distinction. The *ratio decidendi* of *Shapiro* is that the residence requirement creates two classes of citizens, who are equal, but who receive unequal treatment. This, according to *Shapiro*, is " * * * invidious discrimination denying * * * equal protection of the laws." 89 S.Ct. at 1327.

Hence, reluctantly, because it appears to be an unnecessary encroachment upon local government, and because, in my view, the additional mobility that will be provided to welfare families will not inure to the benefit of the children of those families, I concur.