**William Price VAUGHAN, for himself, and Miriam I. Vaughan, for herself, and all others similarly situated, Plaintiffs,**

**v.**

**Willis H. BOWER, Superintendent, Arizona State Hospital, State of Arizona, Defendants.**

**No. Civ–70–10 Phx.**

United States District Court,
D. Arizona.

May 14, 1970.

---

5. A.R.S. §§ 46–233, 46–272, and 46–252.

38

Anthony B. Ching, Chief Trial Counsel, Tucson, Ariz., for plaintiffs.

Gary K. Nelson, Atty. Gen., State of Arizona, Phoenix, Ariz., for defendants.

Before TRASK, Circuit Judge, and CRAIG and COPPLE, District Judges.

## JUDGMENT

CRAIG, District Judge.

This is an action brought under 42 U. S.C. § 1983 and 28 U.S.C. §§ 1343 and 2201 by plaintiffs for themselves and all others similarly situated seeking injunctive relief and a declaration that Arizona Revised Statutes, § 36–522, Subd. B, is unconstitutional in light of the recent decision of the Supreme Court in Shapi-

ro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).[1]

The statute in question, A.R.S., Section 36–522, provides that:

A   The Superintendent may return a nonresident of this state admitted to the state hospital to the home of known relatives or friends or to proper authorities in the state of his residence.

B   For the purpose of this section, a nonresident is a person who has not resided in this state continuously for at least one year immediately preceding his admittance to the state hospital or other designated facility.

*Shapiro* held that a statutory prohibition of welfare benefits to residents of less than a year creates a classification which constitutes an invidious discrimination touching on the fundamental right of interstate movement and which, in the absence of a compelling state interest, denies them equal protection of the laws.

Plaintiffs William Price Vaughan, age 74, and Miriam I. Vaughan, age 62, migrated to Arizona on or about May 30, 1969. Prior to that time they resided in West Virginia where Mrs. Vaughan had previously spent some time in a state mental hospital. She was apparently on a trial home visit at the time the Vaughans moved to Arizona.

On October 16, 1969, Mrs. Vaughan was ordered to be committed to the Arizona State Hospital pursuant to a hearing in Superior Court of Pima County, Arizona. Subsequent to her commitment, Mrs. Vaughan was examined by the hospital and found to be suffering from arteriosclerosis and senile dementia. On December 8, 1969, Mr. Vaughan was informed by state hospital personnel that Mrs. Vaughan would be returned to West Virginia shortly after Christmas because she was a non-resident within the meaning of A.R.S. § 36–522, Subd. B.

Seeking to avoid the return of Mrs. Vaughan to West Virginia, this action was filed on December 15, 1969. On December 23 and 30, 1969, psychiatric examination and interviews of Mrs. Vaughan were made by doctors at the state hospital, and it was concluded that custodial psychiatric hospitalization was inappropriate. In accordance with these medical opinions, defendant Superintendent determined that Mrs. Vaughan was subject to discharge. Said discharge was to be complete on or before February 23, 1970. At the time oral argument was heard in this case on March 30, 1970, Mrs. Vaughan was still at the hospital, officially discharged, but awaiting her husband to resume custody over her.

## ABSTENTION

Defendant contends that this is a proper case for abstention. The Court disagrees. The doctrine of abstention should not be applied simply to afford state courts the first opportunity to pass on federal constitutional claims.[2]

1. Plaintiffs brought this action alleging violation of the Privileges and Immunities Clause of Article IV, Section 2, the Commerce Clause, the Privileges and Immunities Clause and the Equal Protection Clause of the Fourteenth Amendment and the freedom of interstate movement protected by the Due Process Clause of the Fifth and Fourteenth Amendments, as well as the right to privacy and sanctity of marriage under the Ninth and Fourteenth Amendments. In *Shapiro*, the Court held that it had "no occasion to ascribe the source of this right to travel interstate to a particular constitutional provision." By so holding, *Shapiro* disposed of all of plaintiffs' grounds except Mr. Vaughan's allegation that his right to privacy and sanctity of marriage were violated. Since this point was neither briefed on written memorandum nor argued orally, the Court will consider the point to have been abandoned.

2. The action of the Arizona Supreme Court in vacating an appeal as moot in a similar case challenging the one year residency requirement in A.R.S. § 11–297 (nonemergency medical care) suggests that abstention in this case might be futile in the final analysis. Board of Supervisors, Pima County v. Robinson, 10 Ariz.App. 238, 457 P.2d 951 (1969), vacated as moot, 105 Ariz. 280, 463 P.2d 536 (1970).

Zwickler v. Koota, 389 U.S. 241, 248, 251, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Abstention is not appropriate where the state statute is not susceptible of "a construction by the state courts that would avoid or modify the constitutional question." 389 U.S. at 248, 88 S. Ct. at 396. The statute in question, A. R.S. § 36–522, is not challenged as being unconstitutionally "vague." The only construction which would avoid or modify the constitutional question raised herein would be one that either eliminated the waiting period in Subd. B entirely, changed it to a lesser period of time, or held that the Superintendent had no discretionary authority under Subd. A to return patients to their home states or to the homes of known friends or relatives. Such an interpretation would be legislation, not construction.

## MOOTNESS

Defendant further contends that the case has become moot because of the discharge of Mrs. Vaughan from the State Hospital.

■ Defendant cannot, by his own voluntary conduct, moot the case and thereby deprive the Court of jurisdiction. United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1952); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir.1968); Cypress v. Newport News General & Nonsectarian Hospital Ass'n., 375 F.2d 648 (4th Cir.1967); Walling v. Alaska Pacific Consol. Min. Co., 152 F.2d 812 (9th Cir.1945), cert. den. 327 U.S. 803, 66 S. Ct. 960, 90 L.Ed. 1028; Gaddis v. Wyman, 304 F.Supp. 713, 716 (S.D.N.Y. 1969); Kelly v. Wyman, 294 F.Supp. 887, 890 (S.D.N.Y.1968); Heilberg v. Fixa, 236 F.Supp. 405, 407 (N.D.Cal. 1964), aff'd. sub nom.; Lamont v. Postmaster General of United States, 381 U. S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398.

■ Even were the case moot as to plaintiff Mrs. Vaughan, the suit would not be moot as to the other members of the class. Jenkins v. United Gas Corp.,

supra; Kelly v. Wyman, supra, and Gaddis v. Wyman, supra. See also Brockington v. Rhodes, 396 U.S. 41, 90 S.Ct. 206, 207, 24 L.Ed.2d 209 (1969) (per curiam). Defendant cites Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 202, 24 L.Ed. 2d 214 (1969), for the proposition that plaintiff cannot represent a class of whom she is not a member. Hall indicates that the plaintiff therein was never a member of the class he purported to represent. In Brockington, decided the same day as Hall, the Supreme Court suggests that defendant's interpretation of Hall is incorrect.

"Rather, in view of the limited nature of the relief sought, we think the case is moot because the congressional election is over. The appellant did not allege that he intended to run for office in any future elections. He did not attempt to maintain a class action on behalf of himself and other putative independent candidates, present or future. He did not sue for himself and others similarly situated as independent voters, as he might have under Ohio law. Ohio Rev.Code Ann. 2307.21 (1953). He did not seek a declaratory judgment, although that avenue too was open to him. Ohio Rev. Code Ann. 2721.01–2721.15 (1953)." 396 U.S. 45, 90 S.Ct. at 207.

■ The fact that at the time of oral argument there was no one in the class Mrs. Vaughan purports to represent should have no bearing on the mootness question. The record indicates that in recent years thirty to thirty-five patients are returned each year to their respective states of origin pursuant to A. R.S. § 36–522. At least two patients were so returned subsequent to the filing of this action. It is the very administrative action challenged herein which produces the short life of the class plaintiff wishes to represent. What is involved here is a problem " 'capable of repetition, yet evading review.' " Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). It is an appropriate time for a determination to be made.

## THE RIGHT TO TRAVEL

In Shapiro v. Thompson, *supra*, the Supreme Court held that a statutory prohibition of welfare benefits to residents of less than one year's duration constitutes an invidious classification which penalizes the exercise of the right to travel, and which, in the absence of a compelling state interest, clearly violates the Equal Protection Clause. Plaintiffs argue that *Shapiro* is dispositive of the situation herein. We agree.

The effect of A.R.S. § 36–522 is to create two classes of mental patients indistinguishable except on the basis of the length of their residency in Arizona. A statutory scheme which allows a state official to withhold fundamental public benefits to residents of that state on the basis of whether or not they have resided therein for the duration of one year constitutes an "invidious classification." 394 U.S. at 627, 89 S.Ct. 1322. The *classification* has a particularly onerous effect on patients who are indigent or financially needy since they are without the means to obtain alternative treatment. They must acquiesce in the Superintendent's decision to be returned to the state of their former residence, or be deprived of essential mental health care.

Given the existence of an invidious *classification*, the crucial question posed by the reasoning of the *Shapiro* case is whether the classification in this case penalizes the exercise of the right to travel. In *Shapiro* the Supreme Court made it clear that the prospect of receiving no welfare benefits for a period of one year effectively deterred indigents from migrating. However, *Shapiro* did not result in wholesale demolition of all residence or waiting-period requirements. The Court noted that it implied:

"* * * no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." 394 U.S. at 638, n. 21, 89 S.Ct. at 1333.

Thus, *Shapiro* did not hold that residence or waiting-period requirements *per se* penalized the exercise of the right to travel. The Court was more specifically concerned with the effect of residence requirements on the denial of public benefits "upon which may depend the *ability of the families to obtain the very* means to subsist—food, shelter, and other necessities of life." 394 U.S. at 627, 89 S.Ct. at 1327. The Court seemed to imply that the denial of these essential benefits was more closely related to the right to travel. In the two cases to date to consider the ramifications of *Shapiro* in a non-welfare context, consistent results have been reached on the basis of the essential nature of the public benefit involved. An intermediate appellate court in California has held that the reasoning of *Shapiro* does not render invalid California's one year residence requirement for receipt of free tuition benefits at a state university. Kirk v. Board of Regents, Cal.App., 78 Cal.Rptr. 260 (1969), appeal dismissed, 396 U.S. 554, 90 S.Ct. 754, 24 L.Ed.2d 747. The thrust of the *Kirk* holding is that *Shapiro* involved benefits essential to the "preservation of life and health" which necessarily have a close functional relationship with the right to travel. Since free education did not constitute such a fundamental aspect of basic survival and subsistence, its denial would not be a consideration of sufficient magnitude as to discourage or prohibit interstate travel.

In Board of Supervisors, Pima County v. Robinson, 10 Ariz.App. 238, 457 P.2d 951 (1969), vacated as moot, 105 Ariz. 280, 463 P.2d 536 (1970), the Arizona Court of Appeals held unconstitutional in light of *Shapiro* a statutory requirement that in order to be eligible for non-emergency public hospitalization, medical care, or out-patient relief an in-

digent must have been a resident of that county for the preceding twelve months. The implication is that basic non-emergency medical care and treatment are "necessities of life" within the meaning of *Shapiro*.

The case herein falls somewhere between *Shapiro* and *Robinson* on the one hand and *Kirk* on the other.

■ If an invidious classification penalizes the exercise of the right to travel, it is unconstitutional in the absence of a *compelling* state interest. 394 U.S. at 634, 89 S.Ct. 1322. It should be noted, however, that notwithstanding how compelling the state interest may be, certain state objectives are impermissible. Specifically, "neither the deterrence of indigents from migrating to the State nor limitation of welfare benefits to those regarded as contributing to the State is a constitutionally permissible state objective." 394 U.S. at 633, 89 S.Ct. at 1331. Defendant has not pressed these proscribed state interests in support of the invidious classification contained in A.R.S. § 36–522.[3]

Defendant attempts to justify the classification on the grounds that the situation herein is distinguishable from that in *Shapiro* because: (1) the Superintendent is not *required* to return patients to the states of their previous residence, and (2) the practice in the past has been benevolent in that individuals failing to meet the waiting-period requirement are not denied emergency care and they are only returned to their previous state of residence when it is determined that the former state will accept and provide for them.

■ It is true that A.R.S. § 36–522 does not require the Superintendent of the State Hospital to return patients of less than one year's residency to their former states. However, in terms of its deterrence of the right to travel, its effect is substantially the same. The statute provides no standard for the Superintendent's exercise of discretion.

Even assuming that the Superintendent's discretionary authority to return patients to their former states of residence is exercised benevolently in the best interests of the patient,[4] such a permissible state objective is without a rational relationship to the residency classification. The length of one's residence in the state might be one relevant factor among several in determining what is in that patient's best interest, but it does not warrant status as a determinative factor. The one year classification may indicate very generally how firmly attached to the local community the patient has become which, in turn, might be relevant as to the effect on his emotional stability should his environment be abruptly changed. But the quality and availability of facilities in the former state of residence, the presence of relatives and friends as between the two states, and the patient's general physical and mental well-being are all more closely connected to the patient's best interest. At best, the length of residence in Arizona by itself has a marginal relationship to the suggested state objective.[5]

---

3. In the absence of any enlightening legislative history, this Court remains mindful of the Supreme Court's observation in *Shapiro* that there is "weighty evidence" that exclusion of the poor is frequently the specific objective of a residence requirement in the welfare area. 394 U.S. at 628, 89 S.Ct. 1322.

4. Although defendants' written memorandum does not expressly state the "best interest of the patient" as the justification for the classification in A.R.S. § 36–522, the Court was of the opinion that this was the substance of his position at oral argument. The fact that Arizona returned patients to their former states of residence only when the latter would accept and provide for them, by itself appears to be unrelated to any state interest other than a generalized humanitarian interest in insuring that the patient was given treatment somewhere and not turned out onto the street to fend for himself.

5. Furthermore, it should be noted that the fact that newcomers are afforded emergency treatment and subsequent care of some duration at the State Hospital would

"But, of course, the traditional criteria do not apply in these cases. Since the classification here touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter standard of whether it promotes a *compelling* state interest. Under this standard, the waiting-period requirement clearly violates the Equal Protection Clause." 394 U.S. at 638, 89 S.Ct. at 1333.

The application of *Shapiro, supra,* to the instant case discloses the unconstitutionality of A.R.S. § 36–522 as violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

Wherefore, it is ordered:

Defendants' motion for summary judgment is denied; plaintiffs' crossmotion for summary judgment is granted; the temporary injunction heretofore issued is made permanent.

not cure an otherwise unconstitutional statute. Board of Supervisors, Pima County v. Robinson, *supra,* (1969). As the Court in Robinson noted, two of the states involved in *Shapiro* gave qualified temporary welfare care to newcomers. "The Court, however, obviously did not believe this cured the statute's defects." Id.