498 P.2d 461

**MARICOPA COUNTY et al., Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA, et al., Respondents.**

**No. 10750.**

Supreme Court of Arizona, In Banc.

June 30, 1972.

Rehearing Denied Sept. 12, 1972.

**374**

Moise Berger, Maricopa County Atty. by William Carter, Deputy County Atty., Phoenix, for petitioners.

Lewis & Roca by Walter Cheifetz, Phoenix, for respondents.

HOLOHAN, Justice:

Petitioner, the Board of Supervisors of Maricopa County, filed this petition for special action to seek a review of the order and judgment of the Superior Court compelling the Petitioner to accept the Respondent Evaro as a patient at the Maricopa County General Hospital. The Respondent Superior Court ruled that the residency requirement in A.R.S. § 11–297 was unconstitutional, and that all persons in the county who were indigent would be entitled to medical care at the county hospital irrespective of the length of residence within the county. Because of the importance of the issues involved and the need for a prompt resolution of the problem, the Petition was accepted for determination by this Court.

The parties have stipulated the essential facts. They have agreed that the Respondent Evaro was an indigent person who required continued medical care for the preservation of his health and well being, but his medical condition did not constitute an emergency case needing immediate hospital or medical care. The Respondent Evaro had not been a resident of Maricopa County for 12 months preceding the requirement for medical care or at the time of the filing of the action in the Superior Court. He was treated at Memorial Hospital, and the hospital joined with Evaro in the action in the Superior Court to compel the Board of Supervisors to accept the Respondent as a patient at the County General Hospital, and to pay the Respondent Memorial Hospital the sum of $1,202.60 for hospital care furnished Evaro up to the time of the filing in the Superior Court.

Substantially, the same facts as here presented were submitted to the Superior Court, and that court ruled in favor of the position of the Respondents holding that the residency requirement found in A.R.S. § 11–297 was unconstitutional and void and, therefore, the Petitioners were ordered to accept Evaro as a patient at the County General Hospital where his medical care was to be provided, and judgment was given against the Board of Supervisors, and in favor of Memorial Hospital.

The sole question presented in this cause is whether the residency requirement of the Statute violates the Federal Constitution.

A.R.S. § 11–297 provides:

"A. Except in emergency cases when immediate hospitalization or medical care is necessary for the preservation of life or limb no person shall be provided hospitalization, medical care or outpatient relief * * * without first filing * * * a statement * * * that he is an indigent * * * and that he has been a resident of the county for the preceding twelve months."

The principal case relied upon by Respondents is that of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The Supreme Court of the United States declared a one year residency requirement of a state for eligibility for welfare to be unconstitutional. The U. S. Supreme Court held that such a residency requirement constituted an "invidious" classification which interfered with a fundamental right, the right to travel, and, in the absence of a compelling and substantial state interest, such residency requirement cannot stand.

While the *Shapiro* case dealt with eligibility for welfare funds which were described as necessary to life and well being, various federal courts have extended the ruling to apply to a host of situations. This has largely resulted because of the limitation placed by the Court on the *Shap-*

*iro* holding. See Footnote 21 on page 638 of 394 U.S., on page 1333 of 89 S.Ct. It would seem that the matter is left for a case by case determination. A decision by the California Court of Appeals sustaining that state's residency requirement for tuition free education, Kirk v. Board of Regents, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969), was left standing when the U. S. Supreme Court, without opinion, dismissed the appeal, 396 U.S. 554, 90 S.Ct. 754, 24 L.Ed.2d 747 (1970). A similar decision by a three-judge panel upholding the Minnesota residency requirement was affirmed by the U. S. Supreme Court without opinion. Starns v. Malkerson, 326 F. Supp. 234 (D.Minn., 1970), aff'd 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971). Following these authorities and others, we recently sustained the residency requirement of this state classifying students at the State Universities, and approved as constitutional the requirement that students with less than the required residency pay a greater tuition than the resident students. Arizona Board of Regents v. Harper, 108 Ariz. 223, 495 P.2d 453 (1972).

Recently, the U. S. Supreme Court in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), struck down the Tennessee one year residency for eligibility to vote as not furthering any compelling state interest and as being in violation of the equal protection clause of the Fourteenth Amendment. The Court found that the residence requirement in voting deprived citizens of two fundamental rights, the right to vote and the right to travel. In *Dunn*, as in *Shapiro*, the Court concludes that any classification which serves to penalize the exercise of a fundamental right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional.

Following the *Shapiro* decision, the precise issue presented in this cause was decided by the Arizona Court of Appeals in Board of Supervisors v. Robinson, 10 Ariz.App. 238, 457 P.2d 951 (1969), vacated by us as moot, 105 Ariz. 280, 463 P.2d 536 (1970), and in a three-judge federal case Valenciano v. Bateman, 323 F.Supp. 600 (D.Ariz., 1971). In each instance the court held the classification was unconstitutional.

The county residency requirement for non-emergency medical treatment does not discriminate in favor of residents of Arizona versus recent arrivals. The requirement applies to all citizens within the state including long term residents of one county who move to another county. Thus, the classification does not single out non-residents nor attempt to penalize interstate travel. The requirement is uniformly applied. The district court in *Valenciano* was not impressed with this position, and their position was that there was no distinction between interstate and intrastate travel.

Whether the district court's rationale in *Valenciano* is sound or not is not terribly important. The main point is that the Legislature was not intent on interfering with interstate travel as was the fact in the *Shapiro* case. Nor does the matter in issue deal with such fundamental rights as speech or voting. Contrary to the Court of Appeals and the district court, we believe that this classification more properly falls within the permissible area of reasonable regulation as approved in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The U. S. Supreme Court held the Maryland maximum welfare grant regulation constitutional although the grant placed an absolute limit on the amount to be paid a dependent family regardless of size and actual need. The Maryland statute and regulations, as in a number of states, fix a standard of need for an eligible family, and the standard of need is increased with each additional person or child in the household subject to a maximum limit of $250 per month irrespective of the number of children in the family needing the assistance. The classification was upheld on the "reasonable basis" test. As the Court said in *Dandridge*:

"In the area of economics and social welfare, a State does not violate the

Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369, 377. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730, 734. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393, 399." 397 U.S. at p. 485, 90 S.Ct. at 1161.

The Legislature has placed the sole and exclusive responsibility for hospitalization and medical care of the indigent sick on county government. A.R.S. § 11–291. No particular standard is set to guide the counties other than that they may include in their budgets and tax levy such amount as is deemed necessary and adequate for the purpose. A.R.S. § 11–292.

The wide differences in county resources among the counties result in different economic ability to meet the needs of the residents within the county who need medical care. Some reasonable basis of determining the demands to be made on such county facilities or resources must exist if the county is to be able to budget and tax to carry out its responsibilities. The Legislature has chosen to use a county residency base. Our duty is not to decide whether that position is wise or whether it best fulfills the social need. Our duty is to determine whether it has rational basis "free from invidious discrimination." We believe that the statute is constitutional.

Petitioner argues also that there is a compelling interest of county government,

especially Petitioner county, in the classification. Absent a residence requirement, any indigent sick person in the state could seek admission to Petitioner's hospital, the facilities being the newest and most modern in the state, and the resultant volume would cause long waiting periods or severe hardship on Petitioner county if it tried to tax its property owners to support the indigent sick of the state. The point, while perhaps overextended, raises a serious practical problem vital to the interests of the residents of Petitioner county. Should the development of modern and effective facilities be discouraged because such efforts attract an inordinately large group of users? How can a county plan to meet the future needs of its indigent sick unless there is some predictable factor? Certainly not a perfect answer but one which allows for some reasonable basis is that of resident population. Good county administrators plan ahead to meet the needs of their citizens. Collection of information on rising population figures and rate of growth is a continuing endeavor. Based on such data, county government can prepare budgets, plan for new facilities, secure financing, and generally do those things necessary to provide the service. Such efforts are not accomplished at a whim; time is essential, and so is a base from which to operate.

The Legislature may wish to change the present system of indigent medical care from county responsibility to state responsibility with the larger tax base, but it is not our function to decide the best means of accomplishing the solution to a particular social problem. This responsibility constitutionally rests with the Legislature.

We find the residency requirements of A.R.S. § 11–297 to be constitutional and a valid exercise of legislative power and, therefore, the judgment of the Superior Court in Cause No. C251236 is vacated.

Judgment vacated.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.