**James BECKET, on behalf of himself and all other persons similarly situated, Plaintiffs,**

**v.**

**Sol MARKS, District Director, Immigration and Naturalization Service, et al., Defendants.**

**No. 72 Civ. 3436.**

United States District Court,
S. D. New York.

May 14, 1973.

American Civil Liberties Union Foundation, New York City, for plaintiffs by Melvin L. Wulf, Sanford J. Rosen, John H. F. Shattuck, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants by Stanley H. Wallenstein, New York City, of counsel.

GURFEIN, District Judge.

This is a purported class action for declaratory and injunctive relief against three officials of the Immigration and Naturalization Service ("INS") and the Attorney General of the United States. Jurisdiction is predicated upon U.S.

Const. art. I, § 9, clause 3 and the First, Fourth, Fifth, Ninth and Fourteenth Amendments; 5 U.S.C. §§ 701–706 and 28 U.S.C. §§ 1331, 1337, 1361, 2201 and 2202. It is alleged that the matter in controversy exceeds the value of $10,000.

The plaintiff is a native born citizen of the United States, an attorney and writer. The action is brought as a class action "pursuant to rules 23(a), 23(b)(1)(A), 23(b)(2) and 23(b)(3)." The purported class represented by the plaintiff "consists of all American citizens whose names and certain information pertaining to them and their First Amendment activities are contained on a checklist maintained by the defendants . . . at all points of entry into the United States, and who are not the subjects of any current and outstanding federal arrest warrant, indictment, or information, nor of any court order in connection with bail, parole or probation."

The plaintiff seeks a judgment "declaring the invalidity of and enjoining the defendants from maintaining the listing of his name and additional information concerning him and his First Amendment activities in a checklist maintained by them at all points of entry into the United States."

In the prayer for relief, the declaration is requested on behalf of the class that the listing of the names of the members of the class "and information about their constitutionally protected activities on the immigration checklist compiled and maintained by the defendants . . ." violates their constitutional rights. Injunctive relief is also sought against the detaining at ports of entry of members of the class, based upon their constitutionally protected speech, beliefs and association and to direct the expunging of all references to the names, political views and associations of the members of the class.

The sole plaintiff, Becket, on two occasions entered the United States, travelling from Europe. On each entry he was allegedly detained by an immigration officer. The first entry was on June 20, 1971 at O'Hare International Airport, Chicago, Illinois. The immigration officer consulted the lookout book[1] and found Becket's name in it. Becket inquired why his name was on the list but allegedly received an unresponsive answer. There is no allegation that anything else happened. The second entry was on September 16, 1971 at Kennedy International Airport, New York City. The immigration officer found Becket's name in the lookout book, and Becket was able to read his name and see that "certain information concerning himself appeared after his name on the list." Becket was required "to fill out and sign an identification card" (Compl. ¶ 13). Refused an explanation of why he was listed, Becket was allegedly told by an immigration supervisor that each time he enters, Washington has to be notified, but that he would not be arrested as a direct result of his immigration "check" and notification to "Washington." There is again no allegation that anything else happened.

On October 5, 1971, Becket wrote to the Commissioner of Immigration recounting these experiences and requesting an explanation of "why my name is in your blackbook [sic] and how to get it out" (Compl. ¶ 14). By letter dated November 10, 1971 Becket was informed that the necessary steps have been taken "to assure you that you are not again inconvenienced when applying for admission to the United States" (a curious turn of phrase as applied to a citizen).

Perhaps in a desire to make a test case, the plaintiff's attorney, who is the distinguished legal director of the American Civil Liberties Union Foundation, wrote to the INS on December 20, 1971 that it construed the November 10 reply

---

1. The checklist will be referred to as the "lookout book." "Lookout books . . . list the names of persons likely to attempt entry into the United States who may be subject to exclusion or in whom another government agency is interested." Gordon & Rosenfield, Immigration Law and Procedure § 3.16d.

to mean "that although Mr. Becket's name is in the book and will remain there, he will somehow not learn about it in the future." An answer was requested "which explains in detail why Mr. Becket's name is included in the 'blackbook.'"

On January 14, 1972, INS replied with reference to the letter of December 20, 1971 "concerning Mr. James Becket of Lakeville, Connecticut" that "[t]he files of this Service do not contain any accusation against *that* Mr. James Becket" (emphasis supplied). The clear implication was that of similarity of name with another and mistaken identification by the immigration officers at O'Hare and Kennedy.

Plaintiff's attorney must have had the same impression because on January 18, 1972 he inquired of INS, "do I take that to mean that there is a different James Becket in the files, and that that fact explains why Mr. Becket was stopped upon entering." The INS replied: "[i]n our letter of January 14, 1972 we intended to convey to you the fact that the notice concerning James Becket has been cancelled and removed from the checklist and that Mr. Becket will not be inconvenienced in the future."

What INS was saying to Mr. Wulf was in effect that your client is removed from the checklist but it is none of your business whether there is another James Becket on the checklist, because if there is that is a secret. On August 11, 1972 this action was filed.

Because Becket, the plaintiff, is no longer in the lookout book, the defendants move to dismiss the complaint pursuant to Rule 12(b)(6), or in the alternative, for judgment on the pleadings pursuant to Rule 12(c) on the ground that the plaintiff has failed to state a claim upon which relief can be granted.

In support of the motion, the Government contends that since Becket has been "unequivocably advised" that his name has been removed from the checklist, the action as it concerns Becket is moot. The Government also contends that since Becket's name is not on the checklist he is not a member of the class he purports to represent.

The plaintiff argues that (1) the defendants have "consistently attempted to place their 'lookout book' and detention system beyond the reach of judicial review," and that, hence, their actions are capable of repetition, evading review; and (2) that the plaintiff's name may be put back on the list absent an order enjoining such action.

He also contends that the defendants are still maintaining the "lookout book" and are asserting their authority to detain persons listed in the book at the request of other Government agencies for reasons unrelated to the enforcement of the immigration laws. Such continued administrative practice under constitutional challenge, it is urged, prevents the action from being moot.

Finally, the plaintiff contends that even if he is no longer a proper plaintiff it is unlikely that a better one will ever appear and that, therefore, Becket should be permitted to represent the constitutional rights of the class even if his own claims are colorably moot.

The answer filed by the defendants, it should be noted, denies the allegation that the maintenance of the plaintiff's name and certain information in the immigration checklist was based solely on the plaintiff's First Amendment activities. This denial alone would require the determination of an issue of fact which could differ with respect to the particular situation of each name in the "lookout book"—said to be as large as a telephone directory.

The issue of mootness where constitutional questions are raised is not without difficulty. There must be "a case of controversy" within the meaning of Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). That is also true of a declaratory judgment action pursuant to 28 U.S.C. § 2201. See Watkins v. Chicago Housing Authority, 406 F.2d 1234 (7 Cir. 1969). And where corrective action has been

taken, the courts have not hesitated to find an action moot even though constitutional issues had been raised. See Norman v. Connecticut State Board of Parole, 458 F.2d 497 (2 Cir. 1972); see Watkins v. Chicago Housing Authority, *supra*. The Supreme Court has itself held constitutional rights cases moot. See Gray v. Board of Trustees, 342 U.S. 517, 72 S.Ct. 432, 96 L.Ed. 540 (1952); Diffenderfer v. Central Baptist Church of Miami, Florida, Inc., 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972). And a statement by the United States that it does not intend to violate the claimed rights of the plaintiff can suffice to make the case moot. See Cherry v. Postmaster General, 332 F.Supp. 785 (S.D.N.Y.1971), aff'd, 460 F.2d 1063 (2 Cir. 1972).

■ The plaintiff relies on the doctrine stemming from the Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) that where "short term orders [are] capable of repetition, yet evading review," the case is not moot. There is no doubt that the doctrine still has validity. See Alton & Southern Railway Co. v. International Association of Machinists & Aerospace Workers, 463 F.2d 872, 878 (D.C.Cir. 1972). But the burden is on the party contesting mootness to show that there is "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953).

■ In the case at bar, as his own counsel recognized, the plaintiff was obviously the innocent victim of misidentification. That has been corrected. The Government solemnly affirms that not only has Mr. Becket's name been removed from the "lookout book" but that he will not be inconvenienced in the future. I do not see what more the INS can be expected to do to make its intentions vis-a-vis Mr. Becket clear. There is no conceivable reason why the Government should seek to reinscribe the name of a person who has been the victim of misidentification. It is clear that as far as Mr. Becket is concerned, his action is moot.

As the matter now stands it is hard to believe that Mr. Becket's rights of free speech and association are really being chilled by the fear that his name may someday be returned to the checklist. Whether the list is beyond the authority of INS is, therefore, of no more concern to the plaintiff than to any other "concerned" citizen.

The plaintiff argues, however, presumably in the quite legitimate endeavor to raise a constitutional question concerning the entire "lookout book" procedure, that even though Mr. Becket's case is "colorably" moot he may, nonetheless, represent the class.

■ While it is true that in matters affecting the public interest it is proper to submit them for constitutional adjudication if they can be molded into a "case or controversy," see Kennedy Park Homes Association v. City of Lackawanna, New York, 436 F.2d 108 (2 Cir. 1970), it is also true that the courts will not decide a moot case on the sole ground of public importance. Amalgamated Association of Street Electric Railway & Motor Coach Employees of America Div. 998 v. Wisconsin Employment Relations Board, 340 U.S. 416, 418, 71 S.Ct. 373, 95 L.Ed. 389 (1951).[2] Here the plaintiff, having been taken off the list, has no more standing to litigate an actual controversy than a citizen who was never on the list but fears he may be so inscribed. Cf. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).

Yet a happy ending for the particular plaintiff does not necessarily ring down

---

2. The Court quoted from St. Pierre v. United States, 319 U.S. 41, 42, 63 S.Ct. 910, 911, 87 L.Ed. 1199 (1943) where it had said: "A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of litigants in the case before it." (Citations omitted.)

the curtain for the class, if it is a definable class. See Vaughan v. Bower, 313 F.Supp. 37, 40 (D.Arizona 1970), (three-judge court); Jenkins v. United Gas Corp., 400 F.2d 28 (5 Cir. 1968).[3] And there may be other plaintiffs or intervenors to stand in his shoes, of which there are none here.

■ But putting aside for now whether in a Rule 23(b)(2) situation, the plaintiff must himself be a member of the class (which Becket is not), the class proposed is, itself, too amorphous to qualify for class action procedures.

It includes *all* citizens on the list against whom there is no federal arrest warrant, indictment or information, nor any court order in connection with bail, parole or probation. Since the list is compiled from information furnished to INS by various federal agencies and possibly state authorities as well, it probably includes suspected narcotics couriers and other suspected smugglers, tax violators, suspected citizen spies for foreign governments, and state court fugitives as well as alleged political activists.

■ So far as the allegations go, nothing happens to a citizen on the list except that he may be asked to fill out an identification card—a chore that used to be imposed upon all citizens returning from abroad. He is not taken into custody, under the procedure alleged to be continuing, but the information is merely sent to "Washington" that he is at home again. If there should eventuate against that person any unconstitutional deprivation of his constitutional rights, such deprivation would be subject to judicial scrutiny in the customary manner, and we may assume would be dealt with vigorously. In sum, I can see no serious deprivation of constitutional right and certainly none that can weigh more heavily than the need of law enforcement officials to protect our borders and to expose criminal activity. Such official action is of benefit to all of us, and to call the slight inconvenience that may be caused to a person on the list a violation of civil liberties seems to me to weaken rather than strengthen the praiseworthy efforts to secure civil liberties for all.

So far as a 23(b)(2) class[4] is concerned the Court upon entry of a judgment could do no more than sketch out the general boundaries of permissible inclusion in the "lookout book." That would hardly accomplish more than would a declaratory judgment in a single plaintiff action.[5] For the nuances affecting each individual person listed who would claim relief by a contempt citation would be manifold enough to make that type of relief impractical. It is not like a civil rights case where black chil-

3. It is not easy to square these holdings with the statement of the Supreme Court in a Rule 23(b)(2) type of class suit that "They cannot represent a class of whom they are not a part." Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962).

4. 23(b)(2): "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: * * * (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . ."

5. The difficulties of a class action under Rule 23(b)(3) as alleged, would, in any event, be insurmountable. The list would have to be screened by somebody to isolate those, if any, who are on it solely because of activities protected by the First Amendment.

The screening should not be *ex parte*, but any common screening to determine the class would expose the names of persons suspected of criminal activity whose identification in the "lookout book" should remain secret for obvious reasons.

In any event in a Rule 23(b)(3) class action actual notice would have to be given to all members of the class, since their names, and presumably their addresses, are known. Rule 23(c)(2)— the Court must send "individual notices to all members who can be identified through reasonable effort." A Rule 23(b)(3) class is simply not manageable. See Eisen v. Carlisle, 479 F.2d 1005 (2 Cir. 1973).

dren or nonresidents are generally readily identifiable. *Cf. Vaughan, supra; Jenkins, supra.* In this kind of case the courts must assume that the executive department will not ignore judicial guidelines or seek to evade them. We have seen, in criminal cases, that where the appellate courts affirm a rule of constitutional law it is generally followed, though no class action has been brought.

For these reasons it seems to me better to dismiss the complaint and wait for a challenge by a plaintiff who can claim some injury which has ripened into a true "case or controversy" than to succumb to the temptation of advising a separate branch of Government of what it may or may not do. In the long run it has been healthier in our polity to recognize that the separation of powers is also crucial to liberty under law.

Since I may be in error on the issue of mootness, I have also given my views on why this complaint must be dismissed for failure to state a claim upon which relief can be granted. The opinion is not intended to foreclose the constitutional questions, however, if the facts of another case should show injury to a plaintiff. In view of the foregoing I do not address myself to the question of the jurisdictional amount.

The complaint is dismissed.