

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

November 21, 1973

The Honorable David Wade
Commissioner
Department of Mental Health and
   Mental Retardation
Box 12668, Capitol Station
Austin, Texas 78711

Opinion No. H- 156

Re:  Effect of Vaughan v.
      Bower, 313 F. Supp. 37,
      on residency require-
      ments of various statutes
      having to do with mental
      health and mental retard-

Dear Commissioner Wade:
      ation.

You have asked our opinion on several questions having to do with admission requirements to State hospitals and schools under the jurisdiction of your department in light of the decision in Vaughan v. Bower, 313 F. Supp. 37 (D. Ariz. 1970), affirmed without opinion, 400 U.S. 884 (1970).

The Vaughan decision concerned an Arizona statute which permitted the superintendent of a state hospital for mental patients to return "non resident" patients to the home of known relatives or friends or to proper authorities in the state of his residence, defining a "non resident" as a person who had not resided in the state continuously for at least one year prior to admittance to the facility. Relying upon Shapiro v. Thompson, 394 U.S. 618 (1969), the court held that, in the absence of a compelling state interest, the statute set up an "invidious classification" penalizing the exercise of the federally protected, fundamental right to travel, and was unconstitutional as violating the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

Your first question asks, "What are the residency requirements, if any, for admission to a Texas state school for the mentally retarded? " Article 3871b, Vernon's Texas Civil Statutes, is The Mentally Retarded Persons Act. Generally, it provides for admission to a state school in one of two ways - either judicially (§ § 5-8) or voluntarily (§ 9). There is no specific requirement that a mentally retarded person be a resident or citizen

of Texas to be admitted to a State school.  Texas "citizenship" is required for admission to a State diagnostic center, and "Texas citizen" is defined in § 3(2) is a way which would seem to be invalid under the Vaughan decision. Unless otherwise compelled to do so, we should not read into the require-ments for admission to a State school one which would raise serious ques-tions concerning the Act's constitutionality.  Newsom v. State, 372 S. W. 2d 681 (Tex. Crim. 1963); Alobaidi v. State, 433 S. W. 2d 440 (Tex. Crim. 1968),cert den., 393 U. S. 943 (1968).

Section 2 of the Act provides:

> "It is the purpose of this Act to afford
> mentally retarded Texas citizens an opportunity
> to develop to the fullest practicable extent their
> respective mental capacities. " (emphasis added)

This, in our opinion, does not establish a requirement of citizenship or residence.

It is our opinion, therefore, that Article 3871b, V. T. C. S., imposes no residency requirements on admission to a Texas state school for the mentally retarded.  However, our answer is rendered academic by § 2(e) of the Special Provisions Relating to Institutions, etc., of the Appropriation Act for fiscal 1974-1975 (House Bill 139, 63rd Leg., p. II-70) that:

> "None of the moneys appropriated to the . . . Depart-
> ment of Mental Health and Mental Retardation . . .
> may be expended for the training or medical treatment
> except in emergencies of any student or patient who is
> not a citizen or resident of this state. . . . "

If "citizen" is intended to exclude a resident alien, it violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.  Graham v. Richardson, 403 U. S. 367 (1971).

However, we cannot say that a compelling state interest in limiting such admittance to bona fide "residents" could not be demonstrated. "Resi-dency" in that sense connotes a union of volition, intention and action. Mills

v. Bartlett, 377 S. W. 2d 636 (Tex. 1964). Compare Paudler v. Paudler, 185 F. 2d 901 (5th Cir. 1950), cert. den. 341 U. S. 920 (1951). Distinctions designed to preserve state supported facilities for bona fide residents of the state are not necessarily invidious. See Toomer v. Witsell, 334 U.S. 385 (1948); Blake v. McClung, 172 U.S. 239 (1898); American Commuters Association v. Levitt, 279 F. Supp. 40 (S. D. N. Y. 1967), aff'd 405 F. 2d 1148 (2d Cir. 1969). Vaughan only condemns arbitrary durational require- ments to establish residency.

Therefore, however we may construe Article 3871b, there are no funds available to support the admission of non resident students and the answer to your first question must be that, except in emergencies, persons who are not bona fide residents of Texas should not be admitted to a Texas school for the mentally retarded.

Your other two questions, raising similar inquiries concerning the provisions of § 2. 20 of Article 5547-202 and Article 5547-16, V. T. C. S., are:

"2. What are the residency requirements with respect to the application of the provisions of Article 5547-202, Section 2. 20 . . . . ?

"3. What are the residency requirements with respect to the application of the provisions of Article 5547-16 . . . . ? "

Article 5547-16(a), part of the Mental Health Code adopted in 1957 (Acts 1957, 55th Leg., p. 505, ch. 243), provides that the Board for Texas State Hospitals and Special Schools may return a nonresident patient committed to a mental hospital in Texas to a proper agency of the state of his residence. "Resident" is defined [Article 5547-4(n), V. T. C. S.] as a person who has lived in Texas continuously for a period of one year or more and who has not acquired a residence in another state by living there continuously for one year subsequent to his residence in Texas.

It is our opinion that Article 5547-16, V. T. C. S., insofar as it incorpo- rates the definition of "resident" found in Article 5547-4(n), V. T. C. S., is

unconstitutional and unenforceable under the rationale of the Vaughan case. Our opinion would result in removing from the statute any requirement that a person becomes a resident entitled to hospitalization only by living in the state continuously for a period in excess of one year.

Section 2.20 of Article 5547-202, V. T. C. S., the statute creating the Texas Department of Mental Health and Mental Retardation, provides in its Subsection (a):

> "The Department may return a non-resident mentally retarded person committed to a facility for the mentally retarded in this state to the proper agency of the state of his residence."

"Non-resident" is not defined. We construe it to mean a person who is not a bona fide resident, regardless of length of residence. The state may order all patients or students in those institutions, who are not bona fide residents, sent back to the state of which they are bona fide residents.

## SUMMARY

Non residents of the State may not be admitted to a Texas state school for the mentally retarded. Under § 2.20 of Article 5547-202, V. T. C. S., a student in such a school, who is not a bona fide resident of Texas, may be returned to the State of his residence. Similarly, under Article 5547-16, V. T. C. S., a patient in a mental hospital who is not a bona fide resident of Texas, may be returned to the State of his residence.

However, in no event may the status of the person as a bona fide resident be made to depend solely upon his residence in this State for one year or more. Such a requirement, under Vaughan v. Bower, supra, would violate the Equal Protection Clause of the Fourteenth Amendment.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee